**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jorge LEVARIO, a/k/a George Levario,**
**Defendant–Appellant.**

**No. 88–1151.**

United States Court of Appeals,
Tenth Circuit.

June 21, 1989.

William L. Lutz, U.S. Atty., (Larry Gomez, Asst. U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Larry Zinn of San Antonio, Tex., for defendant-appellant.

Before LOGAN, WRIGHT,* and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Defendant Jorge Levario asks this court to reverse his conviction of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendant contends there is insufficient evidence to support the jury's verdict. We agree as to the conspiracy conviction; thus, we reverse the trial court's denial of defendant's motion for acquittal of conspiracy, but we affirm his conviction for possession with intent to distribute. Defendant also claims the trial court lacked statutory authority to require him to serve a term of supervised release following his prison term. We agree and thus vacate defendant's term of supervised release.

On the evening of August 12, 1987, defendant pulled a U-Haul truck into an immigration checkpoint on Interstate 10 near Las Cruces, New Mexico, accompanied by his friend, Dorothy Bustamante. At the checkpoint a border patrol agent asked defendant what was in the back of the truck. According to the agent, defendant answered it was his furniture, and he was going to Los Angeles where he had taken a job. The agent then obtained defendant's written consent to conduct a search of the truck. The agent's search revealed forty boxes of cocaine—weighing approximately 2,000 pounds and having a wholesale value of $13,500,000—hidden within the furniture. Consequently, both defendant and Ms. Bustamante were placed under arrest.

Later that evening, defendant told a Las Cruces narcotics detective that the contents of the truck belonged to two men unknown to him. He claimed that an old friend of his had arranged for him to drive the U-Haul full of furniture to California for the two strangers. Defendant insisted he thought the truck contained only furniture and that he was paid $500 for driving the truck and $200 to cover expenses. At the time of his arrest, he possessed $700.

Defendant then agreed to cooperate with the authorities by driving the truck to the agricultural checkpoint in Blythe, California, where he alleged the unknown men had told him to leave it. After no one came for the truck in Blythe, defendant stated he was supposed to take the truck to the airport in Van Nuys, California. Defendant drove the truck there, but again no one arrived to claim it.

---

* Honorable Eugene A. Wright, Senior Judge for the Ninth Circuit Court of Appeals, sitting by designation.

Defendant and Ms. Bustamante were subsequently indicted for conspiracy to distribute narcotics in violation of 21 U.S.C. § 846 and possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1). At the close of the government's case, both defendant and Ms. Bustamante moved for judgment of acquittal pursuant to Fed.R. Crim.P. 29(a). The trial court only granted Ms. Bustamante's motion. Defendant then testified he had no knowledge that the U-Haul contained controlled substances, and thus he lacked the intent to commit the crime. The jury, however, rejected defendant's version of the events and convicted him on both counts of the indictment. The trial court sentenced him to concurrent ten-year sentences on each count. In addition, the trial court, pursuant to 21 U.S.C. § 841(b)(1)(A), imposed a five-year period of supervised release to begin after defendant completed his prison term. Defendant now asks us to reverse both convictions on insufficient evidence grounds and, alternatively, to vacate the trial court's imposition of supervised release.

### I. Sufficiency of Evidence

In evaluating a claim of insufficient evidence a court must view all the evidence,[1] direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the government. *United States v. Hooks,* 780 F.2d 1526, 1529 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Then, we must determine whether a reasonable juror could find the defendant guilty beyond a reasonable doubt. If direct evidence is lacking, a "criminal conviction may be sustained on wholly circumstantial evidence." *Id.* at 1531. Further, it is necessary to view the evidence and inferences drawn therefrom in the aggregate rather than in isolation. *Id.* at 1532. Finally, our review here does not include assessing the credibility of witnesses; that task is reserved for the jury. *United States v. Waldron,* 568 F.2d 185, 187 (10th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). With

these principles in mind, we turn to the issues presented.

### A. Possession With Intent to Distribute

■ Defendant argues that the evidence presented was insufficient to prove that he knowingly possessed a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a). The record, however, belies this contention.

Testimony reveals that defendant gave conflicting statements concerning the ownership of the truck's contents. Initially, according to the border patrol agent, defendant contended that the furniture was his, and he was moving to Los Angeles. After the cocaine was discovered, however, defendant stated it was not his furniture, and he was only driving the truck to California for two unknown men. Although defendant denies making the former statement, the jury apparently chose to believe the border agent's testimony. It is not our place to disregard the jury's assessment of a witness's veracity. *United States v. Pennon,* 816 F.2d 527, 530 (10th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987). Thus, the jury could reasonably infer defendant's guilty knowledge from these conflicting statements.

■ Furthermore, a narcotics detective testified that when he asked defendant if he knew what was in the back of the truck he responded: "Well, I didn't think it was that [cocaine], I thought it would be marijuana." This admission constitutes direct evidence that defendant knowingly possessed a controlled substance. That defendant mistakenly thought it was marijuana in the truck is inconsequential. *See United States v. Lopez–Martinez,* 725 F.2d 471, 475 (9th Cir.) (to constitute a violation of 21 U.S.C. § 841(a) it is only necessary to prove defendant knew he possessed a controlled substance even though he may be mistaken as to the specific type of substance), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). Moreover, it is permissible to infer that the driver of a vehicle has

1. We may consider evidence presented by both the government and the defendant. *United*

*States v. Guerrero,* 517 F.2d 528, 530 (10th Cir. 1975).

**1486**

knowledge of the contraband within it. *United States v. Laughman*, 618 F.2d 1067, 1076 (4th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

Defendant gave conflicting stories about whether he went to the U–Haul rental store alone or with someone else. Ultimately, a U–Haul employee testified that defendant came alone. Testimony also indicates defendant changed his statement regarding whether the map found in the truck with a marked route pertained to his trip to California and where the unknown men were going to claim the truck. These conflicting statements provided the jury with additional grounds to suspect defendant's veracity and infer guilty knowledge.

Finally, defendant did not have the names of the people to whom he would deliver the truck. Nor did these unknown men ever arrive at either of the locations where defendant stated they were going to claim the truck. In light of all this evidence, the jury could reasonably infer that defendant's version of the arrangement was a fabrication and could find beyond a reasonable doubt he knowingly possessed a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a).[2]

### B. Conspiracy

■ Defendant also claims the evidence was insufficient to support his conviction for conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 846. Because Dorothy Bustamante, the only other coconspirator named in the indictment, was acquitted, the government was required to prove beyond a reasonable doubt that an unknown coconspirator existed. *United States v. Carcaise*, 763 F.2d 1328, 1331 (11th Cir.1985). It is not enough, however, to prove that a

person associated with the defendant merely existed. The crucial element of a conspiracy under 21 U.S.C. § 846 is that an agreement to violate the drug laws existed.[3] *United States v. Morgan*, 835 F.2d 79, 82 (5th Cir.1987).

■ Here, we cannot say a juror could find beyond a reasonable doubt that defendant and an unknown person agreed to possess and distribute a controlled substance in violation of 21 U.S.C. § 841(a).[4] The government contends defendant's statement that he was delivering the truck and its contents to unknown people in California supports an inference that he conspired with these people to distribute cocaine. Yet, the government used a contrary inference from this evidence to support defendant's conviction for possession with intent to distribute. With creativity, the government asks us to draw mutually exclusive inferences from the same evidence. We believe no reasonable juror could do so.

To be sure, the government is entitled to have all reasonable inferences drawn in its favor. *See Carcaise*, 763 F.2d at 1331. This traditional deference to the jury's judgment, however, stops short of authorizing the jury to make irreconcilable inferences. Thus, we cannot draw such an inference to support the conspiracy conviction.

■ Although the massive quantity of cocaine involved here permits an inference of a conspiracy, standing alone, it is wholly insufficient to sustain a conviction. *Morgan*, 835 F.2d at 82. Similarly, defendant's quick telephone call at the police station does not provide strong evidence of a conspiracy. Defendant testified he telephoned his girlfriend who then hung up on him.

**2.** The large volume of cocaine present was sufficient to support the jury's finding that defendant intended to distribute the cocaine. *See Hooks*, 780 F.2d at 1532; *United States v. MacDougall*, 790 F.2d 1135 (4th Cir.1986); *Barnes v. United States*, 777 F.2d 430 (8th Cir.1985).

**3.** In contrast to some criminal conspiracies, 21 U.S.C. § 846 does not require proof of an overt act in furtherance of the conspiracy. *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th

Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988).

**4.** At the outset, we note there is no direct evidence that defendant reached an agreement to possess and distribute controlled substances. Given the covert nature of conspiracies, direct evidence is often unavailable; accordingly, it is permissible to infer an agreement from circumstantial evidence. *United States v. Hernandez–Palacios*, 838 F.2d 1346, 1348 (5th Cir.1988).

The government did not refute this testimony. Defendant did admit to making several other furniture delivery trips, and their covert nature supports an inference of illegality. Nonetheless, the government presented no evidence defendant agreed to transport contraband on these trips.

The circumstances of this case are similar to those the court confronted in *United States v. Hernandez-Palacios*, 838 F.2d 1346 (5th Cir.1988). There, the only evidence supporting the conspiracy conviction was the defendant's statement that his brother owned one of the buses used to smuggle marijuana, and another person had leased the bus services to a band for which the defendant was a driver. The court held that these two facts were insufficient to establish beyond a reasonable doubt that the defendant conspired with unnamed conspirators to possess a controlled substance.[5] *Id.* at 1349. Although the facts before us are arguably stronger then those presented in *Hernandez*, we do not believe they are adequate to permit a juror to conclude beyond a reasonable doubt that defendant conspired to distribute cocaine; therefore, we reverse the trial court's denial of defendant's motion for an acquittal on the conspiracy conviction.

## II. Term of Supervised Release

█ Finally, defendant claims 21 U.S.C. § 841(b)(1)(A) does not authorize trial courts to impose a term of supervised release for crimes committed before November 1, 1987. We agree.

The Comprehensive Crime Control Act of 1984 amended section 841(b)(1) of the Controlled Substances Act and created two separate subsections which distinguished narcotics offenders on the basis of the volume of drugs involved. Pub.L. No. 98–473, § 502, 98 Stat. 1976, 2068 (1984). Subsection (b)(1)(A), applicable to large-volume narcotics offenders, did not provide for imposition of a special parole term, while subsections (b)(1)(B) and (b)(1)(C) did.[6]

Then, in October 1986, Congress passed the Anti–Drug Abuse Act of 1986 which again modified section 841(b)(1). Pub.L. No. 99–570, 100 Stat. 3207 [hereinafter 1986 Amendments]. Section 1002 of the 1986 Amendments replaced subsections (b)(1)(A) and (B) in their entirety with new subsections which provided for increased penalties including the imposition of supervised release—as opposed to special parole terms—following incarceration. Section 1002 did not prescribe an effective date; thus, it is presumed to have taken effect when the President approved it in October 1986. *United States v. Affleck*, 765 F.2d 944, 948 (10th Cir.1985) (statutes without effective dates are presumed to become effective upon the President's approval). Meanwhile, Section 1004(a) of the 1986 Amendments deleted all other references in the Controlled Substances Act to "special parole term" and substituted the term "supervised release." Congress tied Section 1004(a)'s effective date, however, to the November 1, 1987, effective date of the Sentencing Reform Act of 1984.[7] *See* § 1004(b), 100 Stat. at 3207–6. More importantly, the Sentencing Reform Act of 1984 contained the standards for implementing this new concept of supervised

---

**5.** The court in *Hernandez* was troubled—as we are in the present case—by the government's *attempt to draw inconsistent inferences* to support different convictions. The court noted that the government's theory at trial was that the person who the defendant claimed leased the bus services did not exist. Yet, to support the conspiracy conviction the government relied on this person's existence. 838 F.2d at 1349.

**6.** The 1984 Amendments produced the odd result that special parole terms could not be imposed on large volume narcotics offenders but were mandatory as to those convicted of dealing smaller amounts of narcotics. The court, in

*United States v. Sanchez,* 687 F.Supp. 1254, 1256 (N.D.Ill.1988), commented on this oddity: "What seems to have happened is that the people who drew up the statute slipped a cog."

**7.** In the Sentencing Reform Amendments Act of 1985, Congress pushed forward the original effective date of the Sentencing Reform Act of 1984 from November 1, 1986, to November 1, 1987. *See* Sentencing Reform Act of 1984, Pub. L. No. 98–473, § 235, 98 Stat. 1987, 2031 (1984), *as amended by* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985).

release.[8]

Defendant contends that Section 1002 notwithstanding, supervised release cannot be imposed for crimes committed before November 1, 1987. Fortunately, several courts of appeal have already blazed a trail through this statutory thicket, and all have reached the same destination. We decline to take a different path.[9]

The seminal decision is *United States v. Byrd*, 837 F.2d 179 (5th Cir.1988). In *Byrd*, the court noted that the standards for imposing supervised release did not become effective until November 1, 1987. *Id.* at 181 n. 8. Accordingly, the court reasoned:

> [T]ying the effective date of the change to the effective date of the implementing statute would seem the more logical arrangement. Finally, the legislative history of the Sentencing Reform Act of 1984 clearly demonstrates that Congress intended that the imposition of supervised release be tied to the effective date of the supervised release implementing statute. In short, we are unconvinced that Congress intended to set section 841(b) apart from the comprehensive statutory framework developed to replace special parole terms with supervised release.

*Id.*

The government contends *Byrd* is distinguishable from the case before us because the penalties involved there were imposed under 21 U.S.C. § 845a(a) which, at that time, referred to special parole term; thus, the government argues supervised release was not provided for until section 1004's mandated substitution of the terms became effective on November 1, 1987. In contrast, the government points out, that after the 1986 Amendments, 21 U.S.C. § 841(b)(1)(A)—under which defendant was sentenced—expressly provided for imposition of supervised release.

We are not, however, persuaded that *Byrd* is inapplicable. After the President approved the 1986 Amendments, but before § 1004 took effect, § 845a(a) authorized imposition of a special parole term of "at least twice any special parole term *authorized by section 401(b)*."[10] Section 401(b) of the Controlled Substances Act is the equivalent of 21 U.S.C. § 841(b). Hence, § 845a(a) was and is currently inextricably tied to whatever post-confinement monitoring section 841(b) authorizes.[11] Consequently, the court's conclusion that section 841(b) does not authorize supervised release for crimes committed before November 1, 1987, cannot be characterized as dicta.

Moreover, the Fifth Circuit presently interprets *Byrd* as precluding imposition of supervised release pursuant to § 841(b)(1)(B) for crimes committed before November 1, 1987. *See United States v. Posner*, 868 F.2d 720, 724–25 (5th Cir.1989); *United States v. Posner*, 865 F.2d 654, 660 (5th Cir.1989). In addition, three other cir-

---

**8.** Pub.L. No. 98–473, § 212(a)(2), 98 Stat. 1987, 1999 (1984) (codified at 18 U.S.C.A. § 3583 (Supp.1989)).

**9.** *United States v. Chica*, 707 F.Supp. 84 (D.R.I. 1989), appears to be the only case which has ruled in favor of the government on this issue.

**10.** *See* Pub.L. No. 98–473, § 503, 98 Stat. 1976, 2069 (1984), *as amended by* Pub.L. No. 99–570, § 1104, 100 Stat. 3207, 3207–11 (1986) (emphasis added).

**11.** The 1986 Amendments also replaced much of section 845a(b) with new language which authorized imposition of "at least three times any term of *supervised release* authorized by section 401(b)." Pub.L. No. 99–570, § 1104(c), 100 Stat. 3207–11 (emphasis added). Thus, subsection (b) referred to supervised release, while subsection (a) referred to special parole term only until section 1004 of the 1986 Amendments took effect on November 1, 1987. Similarly, section 841(b) contained references to both special parole term and supervised release before section 1004 took effect on November 1, 1987. *Compare* § 841(b)(1)(A) *with* (b)(1)(D) (as redesignated by the 1986 Amendments). Apparently, in the 1986 Amendments, Congress inserted supervised release in those subsections which it substantially revised rather than inserting special parole term only to have it replaced when section 1004 took effect. In contrast, when Congress made only minor revisions to subsections, the phrase special parole term was retained. Thus, we believe the sporadic use of supervised release illustrates the practicalities of drafting and does not evidence congressional intent to effectuate supervised release for selective subsections before the implementing provisions took effect.

cuits have interpreted *Byrd* similarly.[12] *See United States v. Smith*, 840 F.2d 886, 889–90 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988); *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Portillo*, 863 F.2d 25, 26–27 (8th Cir.1988). It is inconsequential that these decisions involved § 841(b)(1)(B) rather than (b)(1)(A) because section 1002 of the 1986 Amendments expressly provided for supervised release in both of these subsections independent from the substitution clause of section 1004. *See United States v. Padilla*, 869 F.2d 372, 381 (8th Cir.1989) (section 841(b)(1)(A) does not authorize imposition of supervised release for crimes committed before November 1, 1987).

In short, we conclude that it is illogical to permit supervised release to be imposed before the standards governing its imposition became effective. The more sensible interpretation of the 1986 Amendments is that Congress meant to effectuate the concept of supervised release only after the concept of special parole term was abolished when the Sentencing Reform Act went into effect on November 1, 1987. *Smith*, 840 F.2d at 889. Accordingly, we vacate defendant's term of supervised release.

AFFIRMED IN PART, REVERSED IN PART, AND SENTENCE VACATED IN PART.

---

12. The Ninth Circuit, however, has recently withdrawn a decision which held that "supervised release" could not be imposed for crimes committed before November 1, 1987. *See Unit-* *ed States v. Torres*, 865 F.2d 1120 (9th Cir.1989), *withdrawn to be republished.* Thus, it is problematical whether this unanimity will be maintained.