**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodrick Kenneth HOWARD,**
**Defendant–Appellant.**

**No. 90–5200.**

United States Court of Appeals,
Tenth Circuit.

June 15, 1992.

Darrell L. Bolton, Tulsa, Okl., for defendant-appellant.

Tony M. Graham, U.S. Atty., and John S. Morgan, Asst. U.S. Atty., Tulsa, Okl., for plaintiff-appellee.

Before LOGAN, BARRETT, and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Rodrick Howard was convicted of (1) conspiracy to possess with intent to distribute, and to distribute, fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 846 and § 841(a)(1), (b)(1)(A)(iii); and (2) possession with intent to distribute fifty grams or more of crack cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) and 18 U.S.C. § 2. The only codefendant was acquitted of the conspiracy charge and all other charges except the lesser included offense of simple possession of a controlled substance. On appeal, defendant challenges the sufficiency of the evidence to support both of his convictions.[1]

---

1. After examining the briefs and appellate    record, this panel has determined unanimously

Defendant arranged to have a package containing more than five kilograms of crack cocaine delivered to the mother of his former girlfriend in Tulsa, Oklahoma. The package was sent by express mail from Los Angeles, where postal inspectors' suspicions were aroused by a fictitious return address. Trained dogs alerted to the presence of drugs in the package. When the package was forwarded to Tulsa, postal inspectors there opened it, removed all but eighty-six grams of the crack cocaine, and then repacked the package after dusting an inner "cocoon" containing the crack cocaine with fluorescent powder.

The package then was delivered as addressed in a controlled delivery. The addressee was Ms. Imogene Brewer, whose daughter, Kolesha Brewer, was defendant's former girlfriend and the mother of one of his children. Defendant had called Ms. Brewer about a week before the package was mailed to obtain her zip code. The day before the delivery, defendant called Kolesha and asked her to receive a package being sent to Ms. Brewer's house for him. Kolesha told Ms. Brewer that a package would be delivered to her house for defendant. The day of the delivery, defendant called Ms. Brewer but did not mention the package. Neither Ms. Brewer nor Kolesha knew the package's contents. After the controlled delivery, Ms. Brewer cooperated with law enforcement officials and arranged for defendant to come to her house and pick up the package. He did so, driven to the house by a cousin, Frederick Arledge, an alleged coconspirator and the codefendant whom the jury later acquitted on the conspiracy charge. Once the two men had removed the package from the house to their vehicle, law enforcement officials arrested them after a high speed chase. Both defendants' clothing exhibited traces of the fluorescent dusting powder.

I

First we consider defendant's conviction for conspiracy. Defendant points out that his codefendant was acquitted of conspiracy.[2] However, because defendant was charged with conspiring not only with his codefendant but also "with others both known and unknown to the Grand Jury," I R. tab 1 at 1, this case is distinguishable from *Romontio v. United States*, 400 F.2d 618 (10th Cir.1968), *cert. dismissed*, 402 U.S. 903, 91 S.Ct. 1384, 28 L.Ed.2d 644 (1971). In *Romontio* we joined several other circuits in adopting the "rule of consistency," holding that a sole conspiracy conviction must be reversed when *all* other alleged perpetrators of the conspiracy are acquitted. *See id.* at 619 (noting that "the result might well be different" in a case with unknown or untried coconspirators); *see also United States v. Howard*, 751 F.2d 336, 338 (10th Cir.1984) ("acquittal of co-conspirators requires a defendant's acquittal only where all of the alleged coconspirators are acquitted"), *cert. denied*, 472 U.S. 1030, 105 S.Ct. 3507, 87 L.Ed.2d 638 (1985); *Hartzel v. United States*, 322 U.S. 680, 682 n. 3, 64 S.Ct. 1233, 1234 n. 3, 88 L.Ed. 1534 (1944). Subsequently, in light of *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), five circuits have reexamined and rejected the rule of consistency. *See United States v. Zuniga–Salinas*, 952 F.2d 876, 877–78 (5th Cir.1992) (en banc); *United States v. Bucuvalas*, 909 F.2d 593, 594–97 (1st Cir.1990); *United States v. Thomas*, 900 F.2d 37, 40 (4th Cir.1990); *United States v. Andrews*, 850 F.2d 1557, 1560–62 (11th Cir.1988) (en banc), *cert. denied*, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *United States v. Valles–Valencia*, 823 F.2d 381, 381–82 (9th Cir.), *modifying on panel rehearing*,

that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Because defendant's brief frames his argument as an attack on the sufficiency of the

evidence and does not cite the cases we discuss, it is unclear whether he intends to argue that his codefendant's acquittal as a matter of law requires reversal of his own conspiracy conviction. We assume he intended to raise this argument along with his other contentions concerning the conspiracy conviction.

811 F.2d 1232 (9th Cir.1987).[3] We need not decide this issue until we have before us a case in which all alleged coconspirators are tried together by a jury and all but one are acquitted.

In the instant case, defendant's lone conspiracy conviction will stand if there is sufficient evidence from which the jury could have concluded that an unknown or unnamed coconspirator existed and that defendant and the unknown or unnamed coconspirator agreed to violate the drug laws. *See United States v. Levario*, 877 F.2d 1483, 1486 (10th Cir.1989); *see also United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir.1990) ("Under the law of *Howard* and *Romontio*, [defendant's] conviction[ ] will stand if there is sufficient evidence in the record from which the jury could have concluded that a conspiracy existed between the [defendant] and any of the unindicted conspirators."). In reviewing the sufficiency of the evidence, we "must view all the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the government. Then, we must determine whether a reasonable juror could find the defendant guilty beyond a reasonable doubt." *Levario*, 877 F.2d at 1485 (footnote and citation omitted).

Conspiracy consists of an agreement to violate the law, knowledge by the defendant of the essential objectives of the conspiracy, and knowing and voluntary participation by the defendant in the conspiracy. *See United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). "[T]he evidence must demonstrate 'the essential element of interdependence' among the co-conspirators." *Id.* (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985)). No direct evidence of conspiracy was presented in this case except with respect to the code-fendant the jury acquitted. However, "[g]iven the covert nature of conspiracies, direct evidence is often unavailable; accordingly, it is permissible to infer an agreement from circumstantial evidence." *Levario*, 877 F.2d at 1486 n. 4. We hold that there was sufficient circumstantial evidence to prove beyond a reasonable doubt that defendant and an unknown or unnamed person or persons were involved in a common plan to possess and distribute crack cocaine.

The person or persons who shipped the package from California are the most obvious unknown or unnamed coconspirator or coconspirators. The mere existence of a buyer-seller relationship between defendant and the shipper, without more, is not sufficient to convict on a charge of conspiracy to violate the drug laws. *See, e.g., Fox*, 902 F.2d at 1514. Other aspects of the buyer-seller or shipper-recipient relationship, however, can strengthen the inference that the parties to the transaction were part of a criminal conspiracy.

In this case, defendant accepted shipment of a massive quantity of crack cocaine after arranging its surreptitious delivery to the address of another person who allegedly had no knowledge of the package or its contents. The huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but by itself this is not enough to convict defendant. *See Levario*, 877 F.2d at 1486. The inference that there was a common scheme for distribution of the crack cocaine involving defendant and the unknown or unnamed person or persons who shipped the package from Los Angeles is buttressed, however, by two additional circumstances. First, there was substantial evidence that defendant was not a person of great financial worth and that the crack cocaine in the package represented a significant amount of money, both to the person who sent the package and to a potential purchaser. This suggests that defendant was not simply a

---

**3.** Four other circuits have published dictum recognizing that *Powell* casts doubt on the continued validity of the rule of consistency. *See United States v. Velasquez*, 885 F.2d 1076, 1091 n. 13 (3d Cir.1989), *cert. denied*, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990); *United States v. Garcia*, 882 F.2d 699, 704–05 (2d Cir.) (quoting *Andrews* favorably), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Mancari*, 875 F.2d 103, 104–05 (7th Cir.1989); *United States v. Dakins*, 872 F.2d 1061, 1065–66 (D.C.Cir.), *cert. denied*, 493 U.S. 966, 110 S.Ct. 410, 107 L.Ed.2d 375 (1989).

purchaser of the crack cocaine in the package. In view of defendant's modest financial status,[4] the value of the shipment indicated the involvement of another person in a common plan for distribution of the drug.

Second, there is no suggestion in the record that defendant went to California, picked up the cocaine and shipped it to himself. Thus, it appears that the shipper was another person who used a fictitious return address, which would not permit the package containing the drugs to be returned if it was undeliverable or rejected, and who addressed the package to Ms. Brewer, who was not the intended ultimate recipient. This supports the inference that either Ms. Brewer was involved in the conspiracy or the shipper had enough acquaintance with and trust in defendant to be assured he could acquire the drugs from Ms. Brewer. In these circumstances, the combination of the fictitious return address and the package being mailed to one not intended to be the ultimate recipient, who himself did not have the funds to purchase such a large quantity, circumstantially supports the existence of a conspiracy between defendant and another person in a plan for possession and distribution of the crack cocaine in the package.

In summary, defendant accepted shipment of more than 5000 grams of crack cocaine, certainly more than he could possibly contemplate consuming himself and more than he could afford to purchase outright with his modest financial means, after having the shipment delivered to an apparently innocent third party at an address different than his own. Under this combination of facts, the jury reasonably could have inferred that he was part of a common plan or scheme with the unknown or unnamed person or persons who sent the package from Los Angeles.

## II

■ Finally, we address defendant's claim that there was insufficient evidence to prove that he possessed fifty grams or more of crack cocaine with intent to distribute. "To constructively possess contraband, a person must knowingly hold the power and ability to exert control over it. Constructive possession can be established by circumstantial evidence and may be joint among several individuals." *United States v. Brooks*, 940 F.2d 598, 600 (10th Cir.1991) (citation omitted). In the instant case, assisted by his cousin, defendant removed the package from Ms. Brewer's house to their vehicle.[5] The package was accessible to them from the time they left the house to the time of their arrest. Traces of the fluorescent dusting powder were found on defendant's clothing upon his arrest. Under these circumstances, there was sufficient evidence for the jury to find beyond a reasonable doubt that he possessed the crack cocaine involved here.

The only remaining question is whether intent to distribute can be inferred from the circumstances present in this case. "A large quantity of cocaine can be sufficient to support a judgment that a defendant intended to distribute the drug." *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir.1991). Under this standard, defendant's possession of more than fifty grams of crack cocaine in the package actually delivered to Ms. Brewer's house, in addition to the fact that nearly five thousand grams of crack cocaine had been removed from the package by postal inspectors, is sufficient circumstantial evidence to prove intent to distribute the drug. Defendant's argument that the postal authorities controlled the amount delivered, and it could have been less than fifty grams, is unavailing considering the size of the original shipment.

AFFIRMED.

---

**4.** Defendant's income in the past several years had come from a series of jobs in fast food and franchise restaurants and occasional odd jobs such as painting houses.

**5.** Defendant was unable to lift the package because of injuries he had sustained in a recent motorcycle accident. Defendant apparently slid the package across the floor of Ms. Brewer's living room, and his cousin picked it up at the front door and carried it out to their vehicle.