996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joe RODGERS, Defendant-Appellant,
and
Donald Lee Powers, Defendant-Appellant.
 Nos. 92-5029, 92-5049.
 United States Court of Appeals, Tenth Circuit.
 May 26, 1993.
 
 1
 Before HOLLOWAY and LOGAN, Circuit Judges, and BRIMMER, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 BRIMMER, District Judge.
 
 Background
 
 4
 Appellant Donald Lee Powers ("Powers") is an admitted cocaine addict. Powers had a girlfriend who introduced him to cocaine and Joe Rodgers (Rodgers). Rodgers dealt cocaine frequently. In February 1991, police arrested one Edward Farner for speeding; at the time, Farner possessed cash and some cocaine. Farner eventually turned informer and agreed to help set up a "buy" between himself and Rodgers. Police subsequently arrested Rodgers. Police obtained a search warrant for a house owned by Powers in which officers found firearms and several pounds of cocaine. Powers was indicted with co-defendant Joe Rodgers in October 1991 for conspiring to distribute cocaine. The Oklahoma district court sentenced Powers to 151 months and a five-year supervised release.
 
 
 5
 Appellant Rodgers also was named in the two-count superseding indictment charging him with conspiring to distribute five kilos or more of cocaine and use or carrying of firearms during drug trafficking. Rodgers was convicted on both counts and received a 200 month sentence, a $10,000 fine per count one, and a consecutive five year sentence per count two. These cases have been consolidated for purposes of appeal.
 
 Discussion
 
 6
 Appellants Rodgers and Powers present nine issues for review on appeal. They are: (1) whether the district court erred in admitting certain tape recorded evidence and the accompanying transcript, and whether the United States committed 'prosecutorial misconduct' when it presented this evidence; (2) whether the district court erred in admitting "drug notes" and related testimony; (3) whether the district court erred when it denied Rodgers' motion for mistrial based on an officer-witness' testimony; (4) whether the evidence was sufficient to support appellants' respective convictions; (5) whether the district court erred when it refused to give an instruction offered by Rodgers which defined the word "firearm;" (6) whether appellants' conviction should be reversed because of cumulative error; (7) whether the district court erred when it assessed Rodgers a $10,000 fine; (8) whether the Sentencing Guidelines are unconstitutional under the Eight Amendment; and, (9) whether the district court erred when it applied the guidelines. We affirm on all nine issues for reasons detailed below.
 
 
 7
 (1) Whether the district court erred in admitting certain tape recorded evidence and the accompanying transcript, and whether the United States committed 'prosecutorial misconduct' when it presented this evidence.
 
 
 8
 Regarding the tape recording itself, the trial court admitted into evidence a tape recording of a conversation between government informant Eddie Farner and Rodgers. It also admitted the United States' version of a transcript of the conversation. We review the district court's decision to admit evidence under an abuse of discretion standard. See e.g., United States v. Johnson, 977 F.2d 1360, 1367 (10th Cir.1992), citing, United States v. Cardenas, 864 F.2d 1528, 1530 (10th Cir.), cert. denied, 491 U.S. 909 (1989).
 
 
 9
 In Johnson, supra, we stated the standard under which the trial court should consider the admissibility of certain evidence:
 
 
 10
 When "evidence is unique, readily identifiable and relatively resistant to change, the foundation need only consist of testimony that the evidence is what its proponent claims." [ Cardenas, 864 F.2d at 1531.] On the other hand, when the evidence "is not readily identifiable and is susceptible to alteration by tampering or contamination, the trial court requires a more stringent foundation 'entailing a "chain of custody" of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.' " Id. (quoting Edward W. Cleary, McCormick on Evidence § 212, at 667 (3d ed. 1984)) (emphasis added in Cardenas ).
 
 
 11
 However, "the chain of custody need not be perfect for the evidence to be admissible." Id. If the trial court--after "consider[ing] the nature of the evidence, and the surrounding circumstances, including presentation, custody and probability of tampering or alteration"--"determines that the evidence is substantially in the same condition as when the crime was committed, the court may admit it." Id. Once the court properly decides that the evidence is admissible, "deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence." United States v. Brandon, 847 F.2d 625, 630 (10th Cir.), cert. denied, 488 U.S. 973, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988).
 
 
 12
 Moreover, we have "specifically rejected the adoption of 'inflexible [foundation] criteria applicable to all cases,' [and] will not upset the [trial] judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording." United States v. Rodriguez-Garcia, 983 F.2d 1563, 1569 (10th Cir.1993), quoting, United States v. Jones, 730 F.2d 593, 597 (10th Cir.1984).
 
 
 13
 Rodgers argues that there existed no proper predicate for admitting the tape, no proper chain of custody, inaudibility, and complete lack of authentication as required by the Federal Rules of Evidence. Rodgers further argues that the trial court improperly admitted the transcript because the United States played only part of the tape to the jury and the transcript submitted by the United States in this regard was incomplete. Rodgers objected at trial and the trial court compelled the United States to play the whole recording for the jury and to amend the transcript. Rodgers urges that the trial court erred because it allowed the United States to utilize informer Farner to testify that the transcript was both accurate and inaccurate. On this basis, Rodgers concludes that both the tape's foundation and predicate were fundamentally flawed.
 
 
 14
 After careful review of the record, we hold the trial court did not err in admitting the tape and the accompanying transcript. Powers and Rodgers had a fair opportunity at trial to generally review the tape, to correct the transcript submitted by the United States (Tr. Vol. at 64, 70-1), and to voir dire the government's informant (Tr. Vol. VII at 52-57). Certainly, either Rodgers or Powers was free to play portions of the tape he felt were relevant as well as to submit his version of the transcript for the jury to consider. Fed.R.Evid. 106. The trial court took great care to admonish the jury regarding the nature of the tape recording (Tr. Vol. VII at 59), the problems associated with the United States' version of the transcript (Tr.Vol. VII at 69-70), and Farner's credibility (Tr.Vol. VII. at 50-1, 58-9). We therefore conclude that the trial court properly considered the nature of the tape recording and the accompanying transcript, and the surrounding circumstances, including presentation, custody and probability of tampering of alteration. 977 F.2d at 1367.
 
 
 15
 Regarding the claim of prosecutorial misconduct, appellant Powers essentially argues that the United States intentionally manipulated the tape recording and the transcript so as to omit allegedly critical evidence. Powers cites no authority on his behalf and does not refer this court to any part of the record in support of his argument.
 
 
 16
 The standard of review for prosecutorial misconduct was well-stated in United States v. Alexander, 849 F.2d 1293, 1296 (10th Cir.1988):
 
 
 17
 Prosecutorial misconduct is not per se reversible error. United States v. Taylor, 800 F.2d 1012, 1018 (10th Cir.1986), cert. denied, --- U.S. ----, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). We follow the general rule that not all misconduct requires reversal; rather, it is only when such conduct can be said to have influenced the verdict that it becomes prejudicial. Id.
 
 
 18
 In United States v. Martinez-Nava, 838 F.2d 411, 416 (10th Cir.1988), we observed:
 
 
 19
 In analyzing claims of prosecutorial misconduct, we must perform a two-step analysis. We must first examine whether the prosecutor's conduct was in fact improper, and if so, then determine whether such conduct requires reversal, or whether it was harmless beyond a reasonable doubt. United States v. Hasting, 461 U.S. 499, 510, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). "It is only when such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal." Marks v. United States, 260 F.2d 377, 383 (10th Cir.1958), cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959).
 
 
 20
 In Alexander, supra, we went on to articulate the standard under which a court would evaluate whether the prosecutorial misconduct complained of was harmless. However, we need not quote this part of the standard because we hold that the prosecution's conduct was not, in fact, improper.
 
 
 21
 At trial, the district court denied appellants' request for a mistrial based on prosecutorial misconduct. Instead, the trial court advised the jury that they did not have a complete version of the tape recording, and that they would hear both a complete version of the tape and would receive a complete transcript. (Tr.Vol. VII at 68). The trial court implicitly accepted the prosecutor's explanation that the United States did not omit parts of the tape intentionally. (Tr.Vol. VII at 67). In any event, the trial court amply corrected the alleged misconduct by playing for the jury the complete tape recording and submitting to them a completed transcript.
 
 
 22
 (2) Whether the district court erred in admitting "drug notes" and related testimony.
 
 
 23
 The trial court admitted into evidence certain "drug notes" allegedly penned by Rodgers and testimony in support thereof. We review the district court's decision to admit the notes and accompanying testimony under an abuse of discretion standard. See e.g., Johnson, supra, 977 F.2d at 1367.
 
 
 24
 Drug notes and testimony in support thereof may be admitted into evidence where the government establishes their foundation and relevancy. United States v. Savaiano, 843 F.2d 1280, 1299 (10th Cir.1988). At trial, one officer testified that he found said drug notes in a vehicle, a Chevy Blazer, which also contained an insurance verification form with Rodgers' name on it (Tr. Vol. VIII at 277); though on cross-examination, the officer stated that the Blazer was not registered in Rogers' name. (Tr. Vol. VIII at 285). Another witness, one Roger Smith, testified that Rodgers drove said Blazer on occasion. (Tr. Vol VII at 109).
 
 
 25
 A second officer testified that he found a separate set of drug notes and a brown suitcase which contained about $30,000 inside an apartment out of which Rodgers and Powers allegedly operated their drug business. (Tr. Vol. VIII at 314). Witness Roger Smith placed Rodgers at the apartment and connected Rodgers to both the notes and the money. (Tr. Vol VII at 129-31). Moreover, witness Eddie Farner placed Rodgers in the apartment on at least three occasions, each of which involved a drug transaction (Tr. Vol VII at 24-8). On this circumstantial evidence, the government established both the foundation and relevancy of the drug notes and related testimony.
 
 
 26
 Appellants' cite to United States v. Ordonez, 737 F.2d 793, 800 (9th Cir.1984) in support of the proposition that the trial court erred because the United States never connected the handwriting from the notes with either Rodgers or Powers. Ordonez is not analogous to the case at bar because, in that case, the government mustered no evidence, direct or circumstantial, that the drug notes in question belonged to the defendants. Id. at 800, 804-05. We therefore conclude that the trial court did not abuse its discretion by admitting this evidence.
 
 
 27
 (3) Whether the district court erred when it denied Rodgers' motion for mistrial based on an officer-witness' testimony.
 
 
 28
 We stated the standard governing the analysis of whether a witness' testimony constitutes an impermissible comment on a defendant's right to remain silent in United States v. Burson, 952 F.2d 1196 (10th Cir.1991):
 
 
 29
 The invocation of the privilege against self-incrimination must be given a liberal construction. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The invocation of the privilege against self-incrimination does not require any special combination of words. Quinn v. United States, 349 U.S. 155, 162, 75 S.Ct. 668, 673, 99 L.Ed. 964 (1955). The privilege against self-incrimination can be asserted in any investigatory or adjudicatory proceeding. Kastigar v. United States, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972).
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 The general rule of law is that once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendants exercised. Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 This does not end our analysis. [If there is an impermissible comment,] [w]e must still undertake our harmless error analysis. Chapman [v. California, 386 U.S. 18, 24 (1967) ] dictates the beneficiary of a constitutional error must prove beyond a reasonable doubt the error complained of did not contribute to the guilty verdict. In United States v. Massey, 687 F.2d 1348 (10th Cir.1982), we set forth five factors as relevant inquiries to be used in determining whether comment concerning the defendant's silence is harmless. These factors include:
 
 
 36
 1. The use to which the prosecution puts the ... silence.
 
 
 37
 2. Who elected to pursue the line of questioning.
 
 
 38
 3. The quantum of other evidence indicative of guilt.
 
 
 39
 4. The intensity and frequency of the reference.
 
 
 40
 5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.
 
 
 41
 Id. at 1353 (quoting Williams v. Zaradnick, 632 F.2d 353, 361-362 (4th Cir.1980).
 
 
 42
 Id. at 1200-1201.
 
 
 43
 The officer's testimony at issue in the case at bar was as follows:
 
 
 44
 Q. Did you have an occasion to do anything with him when you stopped him?
 
 
 45
 A. After Mr. Rodgers was stopped and handcuffed, the uniformed officers took him downtown to the intake room. At a later date I went to try to attempt to interview Mr. Rodgers. He did not want to speak with me or didn't have anything to say.
 
 
 46
 (Tr.Vol. VIII at 368-69).
 
 
 47
 Under the first part of the test in Burson, we hold that Rodgers properly invoked his right to silence because of his actions as outlined in the officer's testimony. Rodgers clearly did not want to speak with the officer. However, we hold that the officer's testimony was harmless error beyond a reasonable doubt for at least four reasons. First, the above-quoted testimony constituted the only reference to Rodgers' silence at trial. Second, the prosecutor never referred to Rodgers' silence in closing argument. Third, the officer testified principally as an expert to establish the street value of some of the cocaine at issue and to explain Rogers' use of various drug-related paraphernalia such as scales, mirrors, etc. (Tr.Vol. VIII at 364). Fourth and finally, a substantial quantum of other evidence adduced at trial connected Rodgers to various drug transactions. We therefore conclude that the officer's impermissible reference to Rodgers' silence at trial was harmless error beyond a reasonable doubt because the jury would have returned a guilty verdict regardless, and the officer's impermissible reference to Rodgers' silence did not substantially contribute to the guilty verdict.
 
 
 48
 (4) Whether the evidence was sufficient to support appellants' respective convictions.
 
 
 49
 Both Rodgers and Powers argue that the evidence will not sustain their respective convictions. In evaluating the defendants' argument, we must view all the evidence and inferences drawn therefrom in a light most favorable to the government, in the aggregate and not in an isolated fashion. United States v. Levario, 877 F.2d 1483, 1485 (10th Cir.1989). We must then decide whether a reasonable juror could find the defendants guilty beyond a reasonable doubt, yet must avoid assessing the credibility of the witnesses. Id. (citations omitted).
 
 
 50
 (a) Rodgers.
 
 
 51
 Rodgers principally complains that the testimony which most incriminated him--that of informer Eddie Farner, and government witnesses Roger Smith and Keva Clayton--was perjured. We hold that, while some of these witnesses may have testified inconsistently, these witnesses did not "knowingly and willfully [give] false testimony." United States v. Jones, 730 F.2d 593, 597 (10th Cir.1984).
 
 
 52
 We observe that witness Eddie Farner in particular testified inconsistently. For example, Farner testified at the preliminary hearing that he injected a half-ounce of cocaine the day he recorded an incriminating conversation with Rodgers. (Tr. Vol. IV at 38.) At trial, Farner testified that he did not inject the cocaine on that day. (Tr. Vol. VII. at 55). However, inconsistent testimony is not necessarily perjured testimony. Defense counsel clearly pointed out to the jury that Farner testified inconsistently and it was for the jury to scrutinize Farner's credibility. This same argument applies to the testimony of Roger Smith and Keva Clayton. As a result, we hold that a reasonable juror could have found defendant Rogers guilty beyond a reasonable doubt and, therefore, that the evidence, albeit at times inconsistent, was sufficient to convict Rodgers.
 
 
 53
 (b) Powers.
 
 
 54
 Powers essentially argues that his role in the conspiracy was that of a drug-addicted bystander who the government swept up in its zeal to overcharge. Powers' Brief at 16. We cannot agree, viewing the evidence and inferences drawn therefrom in a light favorable to the government. The evidence adduced at trial suggested that Powers personally distributed cocaine to customers (Tr. Vol. VII at 19, 22; Tr. Vol. VIII at 172, 180, 184, 189-90, 196-7, 238); that Powers allowed his residence to be used by the conspiracy (Tr.Vol. VII at 25-7, 108, 120; Tr.Vol. VIII at 183, 197-8, 236, 337-39; Tr. Vol. IX at 463); and, that Powers himself acted in partnership with other members of the conspiracy (Tr. Vol. VII at 19-30, 35, 99, 114-15, 151; Tr. Vol. VIII at 196-7, 264-5; Tr. Vol. IX at 439, 492, 582). On this basis, we hold that the evidence was sufficient to convict Powers.
 
 
 55
 (5) Whether the district court erred when it refused to give an instruction offered by Rodgers which defined the word "firearm."
 
 
 56
 Regarding jury instructions, the Federal Rules of Criminal Procedure require that a defendant must "state[ ] distinctly the matter to which [defendant] objects and the grounds of the objection." See Fed.R.Crim.Pro. 30. We review the record for plain error absent such specific objections, otherwise we review Rodgers' claim regarding a specific instruction de novo. United States v. Barbee, 968 F.2d 1026, 1033 (10th Cir.1992).
 
 
 57
 The record shows that defendant Rogers' attorney properly objected, stating that he believed that "there has been no evidence presented that the gun was designed to shoot or if it could shoot." (Tr. Vol X at 620-21). The district court denied Rodgers' proffered instruction because it believed a description of the weapon at issue was unnecessary. (Tr. Vol. X at 620).
 
 
 58
 Defendants may present instructions which relate to their theory of the defense, but such a presentation must be tempered against the trial court's discretion to frame the instructions as it sees fit. See e.g., Barbee, 968 F.2d at 1033; United States v. Alvarez-Moreno, 874 F.2d 1402, 1412-13 (11th Cir.1989). The record shows ample circumstantial evidence that Rodgers carried and used the firearm during his drug dealings. (Tr. Vols. VII, VIII at 36-8, 121-24, 252-54, 294-5; Tr. Vol. IX at 485-86). Moreover, our earlier decisions hold that the trial court may deny defendant's request for a "firearm defined" instruction where the instruction seemed redundant or obvious given the evidence adduced at trial. See e.g., United States v. Bolton, 905 F.2d 319, 322 (10th Cir.1990) (court held that trial court did not err in failing to instruct jury on the definition of firearm because sawed-off shotgun was clearly a firearm, defendant never requested such an instruction nor did defendant object to the instructions given); United States v. Beebe, 467 F.2d 222, 224 (10th Cir.1972) (failure to instruct on meaning of term "firearm" was harmless error in light of evidence adduced at trial). Thus, we conclude that the trial court did not err in refusing to give Rodgers' firearm instruction. Even if the refusal constituted error, the error would be harmless in light of the substantial evidence identifying the firearm and connecting it to Rodgers' and Powers' drug-related activities.
 
 
 59
 (6) Whether appellants' conviction should be reversed because of cumulative error.
 
 
 60
 Rogers and Powers argue that even if no individual error at trial warrants reversal, the cumulative effect of the errors does. " 'The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.' The purpose of cumulative error analysis is to address that possibility." United States v. Caro, 962 F.2d 1438, 1446 (10th Cir.1992). No cumulative effect existed here because we have found only one actual harmless error, i.e., the officer who impermissibly commented regarding Rodgers' right to remain silent.
 
 
 61
 (7) Whether the district court erred when it assessed Rodgers a $10,000 fine.
 
 
 62
 The district court imposed a $10,000 fine upon defendant Rodgers which amounted to half of the minimum $20,000 fine mandated by the guidelines in this case. We review findings of fact regarding a defendant's ability to pay under the clearly erroneous standard of review. United States v. Washington-Williams, 945 F.2d 325, 326 (10th Cir.1991). The record indicates that the district court judge properly took into account the relevant factors for assessing the fine such as the seriousness of the conviction, and the need to promote respect for the law, to provide just punishment and to deter. See Section 5E1.2(d)(1). (Tr. Vol. IX at 2-5). Thus, we hold that the trial court did not act clearly erroneously in this regard.
 
 
 63
 (8) Whether the Sentencing Guidelines are unconstitutional under the Eight Amendment.
 
 
 64
 Powers asserts that the Sentencing Guidelines are unconstitutional because they amount to "cruel and unusual punishment" under the Eighth Amendment. The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. United States v. Youngpeter, 986 F.2d 349, 355 (10th Cir.1993), citing, Solem v. Helm, 463 U.S. 277, 284 (1983). In Powers' case, he contends that his minimum mandatory sentence of 151 months imprisonment is disproportionate to the crime committed. Powers further contends that the guidelines are "cruel and unusual" because they strip the district court judge of "the inherent judicial power to be merciful." Powers' Brief at 20, 22.
 
 
 65
 As noted in our recent decision in Youngpeter, we generally uphold sentences imposed within the range designated by the guidelines because "the determination of the proper penalty is a matter for the legislature."[1] 986 F.2d at 355; see also United States v. Colbert, 894 F.2d 373, 374-5 (10th Cir.1990) (base offense level for defendant's crime not disproportionate to what Congress believed was appropriate for drug offenses).
 
 
 66
 We further disagree that the guidelines violate the Eighth Amendment because they strip the trial judge of his or her "mercifulness," i.e., his or her discretion. See United States v. Jackson, 921 F.2d 985, 988-89 (10th Cir.1990) (explaining the balance in the guidelines between uniformity and proportionality and further explaining circumstances under which court may depart from guidelines). See also United States v. Hughes, 901 F.2d 830, 832 (10th Cir.1990). For these reasons, we conclude that Powers' sentence was not sufficiently disproportionate to constitute cruel and unusual punishment.
 
 
 67
 (9) Whether the district court erred when it applied the guidelines.
 
 
 68
 Powers appeals the district court's application of the guidelines twofold. First, Powers argues that he did not, in fact, possess a firearm for purposes of 2D1.1(b)(1) of the Sentencing Guidelines and, therefore, the trial court erred when it enhanced his sentencing level by two points. Second, Powers contends that he, in fact, accepted responsibility and, therefore, the trial court erred by not granting him a two point reduction for acceptance of responsibility pursuant to sections 1B1.3(a) and 3E1.1(a) of the guidelines.
 
 
 69
 We review the district court's factual findings under the clearly erroneous standard and will not reverse the district court unless the court's findings were without factual support in the record, or, alternatively, if we are left with the definite and firm conviction that a mistake has been made after reviewing all the evidence. United States v. Goddard, 929 F.2d 546, 548 (10th Cir.1991). We review legal questions de novo while giving due deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e); 929 F.2d at 548.
 
 
 70
 First, regarding the firearms enhancement, section 2D1.1(b)(1), Application Note 3 states that the court should apply the two-point upward adjustment "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." In United States v. Underwood, 982 F.2d 426, 428 (10th Cir.1992), we held that the § 2D1.1(b)(1) enhancement for possessing a firearm was proper if the defendant knowingly possessed the firearm during the drug offense, or was criminally negligent in his unwitting possession, or if the defendant knew or could have reasonably foreseen a codefendant's possession of the firearm during the offense. Id. We also recognized that "reasonable foreseeability" may be inferred if a codefendant knowingly possessed the weapon. Id.
 
 
 71
 In the instant case, the district court approved the probation officer's report and made it the basis for the court's findings. (Tr. Vol. XII at 8, 10, 18-9). The probation report found that Powers knew or could have reasonably foreseen Rogers' possession of various firearms based on the evidence presented at trial. The record shows that Rodgers possessed a number of firearms. (Tr. Vol. VII at 36-38, 121-24, 139; Tr. Vol. VIII at 252-54, 267-8, 294-5, 374-5; Tr. Vol. IX at 485-6). Additionally, Officer Mark Robinson testified that he discovered a .44 caliber revolver in a search of Powers' apartment. (Tr. Vol VIII at 294-5). We reason that, "[g]iven [Rogers'] knowing possession of firearms during the conspiracy, we can infer that [Rogers'] possession was reasonably foreseeable to [Powers]." 982 F.2d at 429. Thus, the district did not err when it found that Powers possessed a firearm for purposes of 2D1.1(b)(1) of the sentencing guidelines.[2]
 
 
 72
 Second, regarding acceptance of responsibility, we stated our standard of review as follows:
 
 
 73
 Under United States Sentencing Guideline § 3E1.1, a defendant may receive an offense level reduction of two levels if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The Sentencing Guidelines Commission has recognized that the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, necessitating that his determination be entitled to great deference on review. U.S.S.G. § 3E1.1, comment (n. 5). Hence, in reviewing the trial court's decision not to grant the defendant a downward departure under this guidelines, we apply the clearly erroneous standard. (citations omitted).
 
 
 74
 The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to a reduction of the offense level for acceptance of responsibility. (citations omitted). Combining this burden with the application of the clearly erroneous standard, the trial court's assessment is entitled to great deference by the appellate court and will generally be sustained. (citations omitted).
 
 
 75
 United States v. Ochoa-Fabian, 935 F.2d 1139, 1142 (10th Cir.1991).
 
 
 76
 The district court adopted the probation officer's report which found that Powers admitted only partial responsibility for the crimes outlined in Count I of the indictment. (Tr. Vol. XII at 16-17). The district court reasoned that Powers "was in a position to know a lot more than he said he knew" and, therefore, the district court decided Powers had not accepted responsibility pursuant to the guidelines. Id. We hold that the district court's decision in this regard was not clearly erroneous and must be sustained on appeal.
 
 
 77
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel
 
 
 *
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 [1]
 We are sensitive to the fact that more than one district court has expressed substantial dissatisfaction with results reached via the guidelines. See e.g., United States v. Jefferson, 925 F.2d 1242, 1259 n. 20 (10th Cir.1991) (district court dissatisfied with harsh sentence imposed by use of guidelines and its apparent lack of discretion to alter harsh sentence); see particularly, FED.SENTENCING REP., Vol. 5, No. 4, Jan./Feb. 1993 at 187-205, 233-34 (various appellate and trial court judges discuss plethora of problems associated with current sentencing guidelines)
 We are also sensitive to the fact that mandatory minimum sentences have caused significant problems and are under attack as a result. See e.g., Rhonda McMillion, Hard Time: mandatory minimum sentencing comes under congressional scrutiny, A.B.A. J., March 1993 at 100; FED.SENTENCING REP., Vol 5, No. 4, Jan./Feb. 1993 at 206-235 (various prosecutors, defense lawyers and probation officers express views pro and con regarding sentencing guidelines); Stephen Chapman, End of justice: small crime, big sentence, CASPER STAR-TRIBUNE, Mar. 29, 1993, at A6. We nonetheless reason that it is Congress who must address these problems, not this court.
 
 
 [2]
 We observe that the "reasonably foreseeable" standard is a broad one which reflects the policy articulated in the guidelines at Section 2D1.1(b)(1), Application Note 3. That is, the court should enhance defendant's level by two points "unless it is clearly improbable that the weapon was connected with the offense." The result under this standard is that one defendant's use of weapons in a drug conspiracy will be "reasonably foreseeable" to a co-conspirator in the majority of cases