986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William Scott FUSCI, Defendant-Appellant.
 No. 92-2126.
 United States Court of Appeals, Tenth Circuit.
 Feb. 25, 1993.
 
 Before LOGAN, HOLLOWAY and SEYMOUR, Circuit Judges.
 ORDER AND JUDGMENT*
 SEYMOUR, Circuit Judge.
 
 
 1
 Appellant William Scott Fusci was charged with possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Mr. Fusci was aboard an Amtrak train traveling from Flagstaff, Arizona to Chicago when he was questioned by Agent Kevin Small during a stop in Albuquerque. Mr. Fusci argued that Agent Small lacked reasonable suspicion and filed a motion to suppress. The district court denied the motion. Mr. Fusci entered a conditional guilty plea and now appeals the denial of the motion to suppress. We reverse.
 
 
 2
 Agent Small confronted Mr. Fusci during a stop-over in Albuquerque. Mr. Fusci, who is not handicapped, had engaged a handicapped roomette on the train. This type of room is larger than a typical roomette and can only be reserved by non-handicapped persons within 48 hours of departure. Agent Small stood in the doorway of the roomette and a police officer stood just behind him. After some preliminary questions, Agent Small asked Mr. Fusci whether he had any drugs in his luggage. Mr. Fusci said he did not. Agent Small then asked Mr. Fusci if he would voluntarily consent to a search of his luggage. Mr. Fusci refused to give his consent. Agent Small and the police officer, however, did not move away from the doorway. Rather, Agent Small continued questioning Mr. Fusci in an effort to seek another avenue to search his luggage. Mr. Fusci eventually consented to a dog sniff of his luggage. The dog alerted on a bag that was later found to contain 40 pounds of marijuana.
 
 
 3
 We have addressed the issue of a police encounter aboard a train in United States v. Bloom, 975 F.2d 1447 (10th Cir.1992), and United States v. Ward, 961 F.2d 1526 (10th Cir.1992). A police encounter amounting to the seizure of a person within the meaning of the Fourth Amendment must be supported by reasonable suspicion. Ward, 961 F.2d at 1529. We review a district court's factual findings under a clearly erroneous standard. Bloom, 975 F.2d at 1456; United States v. Walker, 941 F.2d 1086, 1090 (10th Cir.1991), cert. denied, 112 S.Ct. 1168 (1992). However, the question of the reasonableness of a seizure under the Fourth Amendment is a question of law to be reviewed de novo. Bloom, 975 F.2d at 1456. In determining whether a seizure has occurred, we examine the totality of the circumstances of the encounter and the police officer's conduct: "the crucial test is [w]hether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " Florida v. Bostick, 111 S.Ct. 2382, 2387 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)).
 
 
 4
 "[W]hether an encounter occurs in the public view is particularly significant." Ward, 961 F.2d at 1531. "In this Fourth Amendment inquiry, it is relevant that an individual traveling in a private train roomette has a higher expectation of privacy than an individual traveling in a public passenger car of the train." Id. at 1531-32. "An important distinction ... is that defendant was not in an open public place where he was within view of persons other than law enforcement officers." Id. at 1531.
 
 
 5
 Here, as in Ward, Mr. Fusci had engaged a private roomette. Two law enforcement officials were present when Mr. Fusci was questioned. "[T]he presence of more than one officer increases the coerciveness of an encounter." Id., at 1533. Where a person is alone in a private setting and is approached by police to be questioned, he or she is more likely to feel like a "specific object of the officers' inquiry," whereas in a public setting, a "reasonable innocent person is less likely to feel singled out." Id. at 1532.
 
 
 6
 Agent Small questioned Mr. Fusci regarding his travel plans and then told him that the Drug Enforcement Agency had had problems with persons transporting drugs through Albuquerque to the East. Agent Small then immediately asked Mr. Fusci if he was carrying any drugs. Mr. Fusci could reasonably have felt that he was being singled out as a specific target and was not free to leave. Moreover, Agent Small did not inform Mr. Fusci that he had a right to refuse to answer questions or otherwise terminate the encounter. As we said in Bloom, "Agent Small's directly incriminating questions in a nonpublic setting would tend to communicate to a reasonable person that, as the specific target of the agents' investigation, he was unable to terminate the encounter." Bloom, 975 F.2d at 1454. The setting in the present case is similar to those in Ward and Bloom, and we thus conclude that Mr. Fusci was seized under the Fourth Amendment.
 
 
 7
 We next consider whether Agent Small and the police officer had reasonable suspicion to justify the seizure of Mr. Fusci. "To justify an investigative detention of a person, the officer must have a reasonable suspicion that the person is engaged in criminal activity." Bloom, 975 F.2d at 1456 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989), and Terry v. Ohio, 392 U.S. 1, 30 (1968)).
 
 
 8
 The government seeks to establish reasonable suspicion based on information primarily obtained from a confidential informant. Mr. Fusci was traveling alone, on a one-way ticket purchased with cash. He was apparently traveling on short notice, having engaged a handicapped room which can not be purchased until 48 hours before departure. In response to a question by Agent Small, Mr. Fusci replied that he made his reservations about a week prior to the travel date.[1] Agent Small believes these facts fit the profile of a drug courier with which he is familiar. However, these same facts are "wholly consistent with innocent travel," Bloom, 975 F.2d at 1458, and therefore do not amount to reasonable suspicion.
 
 
 9
 The government further argues that in any event Mr. Fusci consented to the dog sniff of his luggage. His consent, however, came only after he had refused to consent to a search of his luggage. More importantly, the dog sniff came during an illegal seizure. " 'Evidence seized in a search conducted during an illegal detention must be suppressed unless there is sufficient attenuation between the detention and the consent to search.' " Ward, 961 F.2d at 1534 (quoting United States v. Turner, 928 F.2d 956, 958 (10th Cir.), cert. denied, 112 S.Ct. 230 (1991)). Consent is valid only if it is voluntary in fact. Id. at 1534. The Supreme Court has delineated three factors to consider: (1) the closeness in time between the Fourth Amendment violation and the alleged voluntary act; (2) whether intervening circumstances are present; and (3) the purpose and flagrancy of the law enforcement officials misconduct. Id. at 1534 (citing Brown v. Illinois, 422 U.S. 590, 603-4 (1975)).
 
 
 10
 Agent Small, with no discernible break after Mr. Fusci refused to consent to a search, then asked Mr. Fusci to consent to a dog sniff of his luggage. There were no intervening factors or break in time between the illegal seizure and Agent Small's request for Mr. Fusci's consent to the dog sniff. See id. Likewise, Agent Small's purpose in asking further questions was unchanged; he wanted to search Mr. Fusci's luggage and was not deterred by Mr. Fusci's first unequivocal refusal. Id. at 1535. Therefore, Mr. Fusci's consent to the dog sniff was tainted by the prior illegal seizure.
 
 
 11
 Following our decisions in Ward and Bloom, and after carefully reviewing the facts and circumstances in this case, we REVERSE the district court's order denying Mr. Fusci's motion to suppress and VACATE Mr. Fusci's sentence.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Agent Small decided that Mr. Fusci was lying at this point since the roomette could have only been reserved 48 hours prior to departure. However, Agent Small was also aware that the ticket was purchased through a travel agent. Mr. Fusci could very well have made his reservations earlier and left the purchase up to the travel agent. We therefore do not find this question and response significant