21 F.3d 1123
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John Charles SCUDDER, Defendant-Appellant.
 No. 92-2201.
 United States Court of Appeals, Tenth Circuit.
 April 22, 1994.
 
 Before LOGAN, ANDERSON, and TACHA, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Defendant John Charles Scudder was convicted of possession with intent to distribute less than fifty kilograms of marijuana under 21 U.S.C. 841(a)(1) and 841(b)(1)(D). He appeals from an order of the district court denying his motion to suppress evidence seized pursuant to a search of his luggage on board a train in Albuquerque, New Mexico. We exercise jurisdiction pursuant to 28 U.S.C. 1291 and affirm.
 
 BACKGROUND
 
 2
 On March 25, 1992 Task Force Officer Sam Candelaria was working as a drug interdiction officer on an Amtrak train during its stop in Albuquerque, New Mexico. After reviewing the passenger manifest of a train stopped at the station, the agent determined that Mr. Scudder had purchased a one-way ticket with approximately $600 cash and was traveling in the handicapped sleeper compartment of the train. His suspicions raised by the nature of the ticket purchase, Agent Candelaria obtained the defendant's travel itinerary from Amtrak officials and called the home telephone number listed to verify its authenticity and was told that Mr. Scudder had been visiting the residence. Agent Candelaria, accompanied by Detective Ivan Smith of the Albuquerque Police Department, approached Mr. Scudder's compartment and knocked. Agent Candelaria testified that he stood away from the sleeper compartment door with his back against the corridor wall, in street clothes with his weapon concealed in a "fanny pack" and that Detective Smith stood out of view in the vestibule area of the car.
 
 
 3
 After Mr. Scudder opened the door, Agent Candelaria identified himself as a police officer and asked if Mr. Scudder would speak with him. Mr. Scudder consented and Agent Candelaria proceeded to ask him a series of questions. He asked where Mr. Scudder was traveling and where he boarded the train. Mr. Scudder responded that his home was in Cincinnati but that he had been visiting in Pomona, California for two weeks. Mr. Scudder then inquired whether Agent Candelaria would like to look at his ticket, to which the agent responded by asking to see Mr. Scudder's ticket. Next Agent Candelaria asked for picture identification and Mr. Scudder produced a birth certificate and a medical card which included his name but no picture. Through the open door, Agent Candelaria observed two new suitcases which were closed and one older suitcase which was open.
 
 
 4
 The agent told Mr. Scudder he worked a drug interdiction program with Amtrak and that he talked with people traveling from California and Arizona to the East and Midwest. The agent then asked if Mr. Scudder would voluntarily consent to a search of his luggage. Mr. Scudder responded "thats [sic] personal isn't it." The agent responded "it is sir, it sure is, it is personal like it said, [sic] and the consent is totally up to you." Mr. Scudder declined to consent to a search. Agent Candelaria asked if Mr. Scudder would consent to a dog sniff of the luggage. Mr. Scudder responded "Sure" and "No problem". Agent Candelaria asked if he could move the luggage out to the common luggage area outside Mr. Scudder's compartment. Mr. Scudder consented. The dog alerted to both suitcases.
 
 
 5
 Agent Candelaria told Mr. Scudder he was going to have to take the bags because he refused consent to open them. Mr. Scudder said "Well, I'll tell you the truth, well if you think there's something wrong there, go right ahead, but I don't know nothing about it." Agent Candelaria asked if defendant would voluntarily consent to a search of the luggage. Mr. Scudder consented. Following a search resulting in seventy-nine pounds of marijuana, Mr. Scudder was arrested and indicted for possession with intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(D). After a hearing the district court denied Mr. Scudder's motion to suppress and, following trial, the jury returned a verdict of guilty.
 
 DISCUSSION
 
 6
 When reviewing an order denying a motion to suppress, we accept the trial court's factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the government. United States v. Amos, 984 F.2d 1067, 1073 (10th Cir.1993). We review de novo the "ultimate determination of Fourth Amendment reasonableness." United States v. Allen, 986 F.2d 1354, 1356 (10th Cir.1993).
 
 
 7
 Following the suppression hearing the district court denied Mr. Scudder's motion to suppress evidence discovered in two suitcases found in the train compartment he occupied by himself. The district court reasoned that regardless of whether Mr. Scudder was subject to an illegal seizure prior to Agent Candelaria's request to perform a dog sniff of the luggage, the search was legitimate because Mr. Scudder's consent to the dog sniff was "voluntary in fact" under the totality of the circumstances test set forth in United States v. Guzman, 864 F.2d 1512, 1520 (10th Cir.1988). The district court determined that once the dogs alerted to the suitcases, sufficient probable cause existed to detain the suitcases and the subsequent examination of the bags was justified.
 
 
 8
 We do not reach the issue of whether Mr. Scudder's consent to the dog sniff was "voluntary in fact" because we find that there was no seizure by Agent Candelaria prior to the consent. "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 111 S.Ct. 2382, 2389 (1991); See United States v. Little, --- F.3d ----, 1994 WL 88834, at * 3 (10th Cir. March 22, 1994) (citing Bostick ). "The test is objective (what would the police conduct have communicated to a reasonable person) and fact specific (based on 'all the circumstances surrounding the encounter')." Little, --- F.3d at ----, 1994 WL 88834, at * 3.
 
 
 9
 Defendant asserts, relying on United States v. Ward, 961 F.2d 1526 (10th Cir.1992) and United States v. Bloom, 975 F.2d 1447 (10th Cir.1992), that the district court erred in not finding that the encounter between Agent Candelaria and Mr. Scudder was a seizure implicating the Fourth Amendment and tainting Mr. Scudder's subsequent consent to the dog sniff. This court has subsequently reversed the essential holdings in Ward and Bloom upon which the defendant relies. United States v. Little, --- F.3d ----, 1994 WL 88834 (10th Cir. Mar. 22, 1994) (en banc).[2] In Little we rejected the proposition that the location of the encounter on a train (outside the train, in a public coach, or in a private roomette) is determinative of the seizure question, and that any implication to the contrary from our previous opinions was overruled. Based on the facts in this case, applying the analysis developed in Bostick and Little, we hold that Mr. Scudder was not subjected to a seizure under the Fourth Amendment. Finding that Mr. Scudder was not "seized" prior to his consent to the dog sniff of his luggage, we reject defendant's argument that Mr. Scudder's consent was tainted by an illegal seizure.
 
 
 10
 Mr. Scudder's further argument that the government failed to present sufficient evidence to support his conviction is without merit. In evaluating a claim of insufficient evidence we view the evidence, direct and circumstantial, as well as all reasonable inferences drawn therefrom, in the light most favorable to the government to determine whether a reasonable juror could find the defendant guilty beyond a reasonable doubt. United States v. Levario, 877 F.2d 1483, 1485 (10th Cir.1989). "If direct evidence is lacking, a criminal conviction may be sustained on wholly circumstantial evidence." Id. (internal quotations omitted) We review the record de novo for sufficiency of the evidence. United States v. Grimes, 967 F.2d 1468, 1472 (10th Cir. 1992). The determination of the credibility of the witnesses is reserved for the jury. Levario, 877 F.2d at 1485.
 
 
 11
 Mr. Scudder testified that he brought two new suitcases containing work clothes onto the train. He testified that he left the suitcases outside his compartment overnight, brought them back into the compartment in the morning and that he had no idea how the drugs came to be in the suitcases. Agent Candelaria testified that two new suitcases which contained seventy-nine pounds of marijuana were found in Mr. Scudder's train compartment. Mr. Scudder's conviction makes clear that the jury chose to discredit his testimony regarding the suitcases. We find substantial evidence by which a reasonable jury could have found defendant guilty beyond a reasonable doubt.
 
 LOGAN, Circuit Judge, dissenting:
 
 12
 I dissent for substantially the reasons I stated in United States v. Little, 1994 WL 88834 at * 8-15 (10th Cir. Mar.22, 1994) (Logan, J., dissenting). I recognize that in banc decisions are binding on panels; but every fact situation requires independent analysis. The instant case is almost identical in its essential facts to United States v. Fusci, No. 92-2126, 1993 WL 53106 (10th Cir. Feb.25, 1993), where a panel of which I was a member reversed a similar suppression order.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The dissent contends that this case is almost identical to United States v. Fusci, 986 F.2d 1430, 1993 WL 53106 (10th Cir.1993), in which this court reversed a suppression order. Finding a higher expectation of privacy in a private roomette, the Fusci court determined that because the agent-passenger encounter took place in a private setting away from public view the element of coercion was stronger. Fusci, 986 F.2d 1430, 1993 WL 53106 at * 2. In Little, we expressly rejected the view that the location of an encounter on a train is determinative of the seizure question, see 1994 WL 88834, at * 4, emphasized that any higher expectation of privacy connected with a train roomette has limited relevance in determining whether a seizure occurred, id. at * 5, and rejected the view that there is a per se requirement that an agent advise a person of their right to refuse to answer. Id. The court in Fusci relied on facts not present in this case--two agents blocking the door to a roomette--and gave weight to factors given less significance under the Little analysis in determining a seizure took place. Fusci, 986 F.2d 1430, 1993 WL 53106, at * 2