PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 12/31/96**

TENTH CIRCUIT

———————

UNITED STATES OF AMERICA,   )
           )
      Plaintiff-Appellee,   )
           )
      v.          )    No. 96-2022
           )
STEPHEN CHARLES REIDER,   )
           )
      Defendant-Appellant.   )

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR88-278SC)

———————

Roger A. Finzel, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

James Martin, Assistant United States Attorney (John J. Kelly, United States Attorney, Robert D. Kimball, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

———————

Before ANDERSON, Circuit Judge, and McWILLIAMS and WEIS[*], Senior Circuit Judges.

———————

WEIS, Senior Circuit Judge.

———————

---

[*]     The Honorable Joseph F. Weis, Jr., United States Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

The issue in this case is when the defendant's term of supervised release began. We conclude that the critical day is the one on which defendant was released on regular parole and, in the circumstances here, that he did not violate supervised release as adjudged by the district court.

After pleading guilty to illegal drug offenses committed during October 1987, defendant was sentenced on January 17, 1989 to five years of incarceration to be followed by three years of supervised release. The sentence also authorized the Parole Commission in its discretion to release defendant under the now repealed 18 U.S.C. §4205(b)(2) before the completion of his full term of imprisonment.

In United States v. Levario, 877 F.2d 1483 (10th Cir. 1989), this Court held that persons in the defendant's circumstances could not be sentenced to supervised release. After hearing about that case, defendant filed a motion for correction of his sentence. The district court obliged and, after a hearing on May 3, 1991, substituted a two-year term of special parole in place of the supervised release originally imposed.

In accordance with an order from the Parole Commission, defendant was released from prison in 1991 and placed on regular parole for two years. When the regular parole expired on October 17, 1993, he began serving the two-year special parole sentence. On May 8, 1995, defendant was taken into federal custody for allegedly violating the conditions of his special parole.

2

Upon discovering that the holding in Levario had been repudiated by other federal courts, defendant filed another motion, again asking the district judge to correct his sentence. He contended that the court could impose neither special parole nor supervised release after his general parole expired. Accordingly, defendant argued that his 1995 conduct did not violate his federal sentence.

At a hearing on January 12, 1996, the district court took judicial notice of Gozlon-Peretz v. United States, 498 U.S. 395 (1991), which held that persons similarly situated to defendant could be sentenced to supervised release but not parole. The district judge then concluded that Gozlon-Peretz applied to defendant. Furthermore, pursuant to a plea agreement reached by the parties, the judge (1) revoked the term of special parole; (2) reinstated the term of supervised release, to begin nunc pro tunc on October 17, 1993, the day defendant completed his term of regular parole; (3) revoked the defendant's supervised release and sentenced him to time served for violating a condition of his supervised release, see 18 U.S.C. §3583(e)(3); and (4) released defendant to a state detainer. Defendant now appeals, contending that the sentence he received on January 12, 1996 must be set aside because the district court lacked jurisdiction to revoke his supervised release and impose punishment.

I.

Defendant was no longer in federal custody, on parole or on supervised release when he filed his appeal, and thus there arises the question as to whether this matter is

3

moot. Although the government has not challenged the validity of the appeal, we must address the mootness issue because it goes to our appellate jurisdiction. Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1347 n. 1 (10th Cir. 1994).

A defendant's release from custody upon the expiration of a sentence does not moot an appeal from the conviction if there is a "possibility" that the defendant may suffer "'collateral legal consequences' from a sentence already served." Minnesota v. Dickerson, 508 U.S. 366, 371-72 n. 2 (1993); Pennsylvania v. Mimms, 434 U.S. 106, 108 n. 3 (1977) (per curiam). Defendant contends that the record of the revocation of supervised release and violation of its terms will adversely affect the amount of bond that may be set for his release in state court, the likelihood of parole or supervised release and any other sentence that may be imposed in the future. We are persuaded that these are "collateral legal consequences" that satisfy the requirements for appellate jurisdiction and, consequently, the appeal is not moot.

## II.

The sentencing conundrum in this case is the result of congressional enactment of two overlapping statutes with differing effective dates. The offense to which defendant initially pleaded guilty is proscribed by the Anti-Drug Abuse Act of 1986, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), which also provides for imposition of a term of "supervised release." That statute became effective on October 27, 1986.

4

The other relevant statute is the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., which introduced the supervised release procedure, a new concept in federal sentencing. However, that statute did not take effect until November 1, 1987. The defendant's offense occurred in the "gap" between the effective dates of the two statutes. The issue, therefore, is whether defendant was subject to special parole under the regimen in operation before the Sentencing Reform Act became effective, or whether the supervised release provisions were applicable.

In Levario, this Court concluded that supervised release did not apply to crimes committed before the Sentencing Reform Act became effective on November 1, 1987. The Supreme Court, however, came to a different result in Gozlon-Peretz. In that case, after analyzing the two statutes and their legislative histories in detail, the Court held that a person in circumstances like those of defendant here could be sentenced to supervised release, but not special parole.

Gozlon-Peretz makes it clear that Reider was properly sentenced to supervised release at the initial hearing in 1989, and the later proceeding in 1991 imposing a special parole term, although consistent with Levario, was not in accordance with the law as the Supreme Court found it to be. Gozlon-Peretz, however, does not address the critical issue raised in this case; namely, the time when supervised release begins.

5

One of the distinguishing features of the Sentencing Reform Act of 1984 was the abolition of the power previously exercised by the Parole Commission to discharge a prisoner on parole before the term of incarceration had expired. The concept of supervised release thus was coupled in the Sentencing Reform Act with the expectation that there would no longer be release on parole. In the "gap" case before us, we have a mixture of the two sentencing philosophies that are somewhat at odds. We believe, however, that the plain language of the statute serves to provide the answer.

Title 18 U.S.C. § 3624(e) reads in pertinent part: "The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release."

The government contends that, under the pre-existing law, the special parole term did not begin until after the regular parole term had been served, and that the same approach should be followed when supervised release is substituted for special parole. Thus, the argument goes, because the regular parole did not expire until October 17, 1993, the period of supervised release -- in place of special parole -- did not commence until that time. Hence, when defendant allegedly engaged in the prohibited conduct, he was still in supervised release status.

The difficulty with the government's position is that it is inconsistent with the straightforward language of the statute that requires supervised release to begin when the "person is released from imprisonment." There is no dispute in this case that defendant was released from incarceration in 1991 and the statute's wording makes the three-year term of supervised release begin at that point. It follows that defendant did not violate supervised release because it had expired before the alleged infraction occurred.

Our research has uncovered two cases decided by the Court of Appeals for the Ninth Circuit that would support the government's position to some extent. In United States v. Vallejo, 69 F.3d 992 (9th Cir. 1995) (per curiam), the defendant's conviction had been reversed and the case remanded for a new trial. Defendant was then released on bail after having served seventeen months of a twenty-four month sentence. After a plea agreement, he was sentenced to time served and one-year supervised release. Defendant contended that the time he spent while released on bail should be credited toward his supervised release term. The Court rejected that argument and noted that, while on bail, defendant was not subject to the conditions of supervised release and it did not become effective until he was ultimately sentenced to time already served. Id. at 994.

In United States v. Blake, 88 F.3d 824 (9th Cir. 1996), a retroactive amendment of the Sentencing Guidelines reduced the length of imprisonment some thirteen months below that which the defendants had already served. They asked that the excess prison time be credited to the supervised release term previously imposed. The Court granted

7

the request, limiting its ruling to the "unusual facts . . . where there has been a retroactive amendment to the guidelines." Id. at 825-26.

The Court of Appeals for the Eighth Circuit, however, took a contrary approach in United States v. Douglas, 88 F.3d 533 (8th Cir. 1996) (per curiam), a case where the facts were similar to Blake. The Douglas opinion noted that supervised release commences "on the day the person is released from imprisonment" and does not run during any period in which the person is imprisoned for a federal crime. Id. at 534. Consequently, the defendant was not entitled to offset the term of supervised release with the excess incarceration time.

The circumstances in those cases are clearly distinguishable from those presented here, and as such we need not cast our lot with either the Eighth or Ninth Circuit in its solution to the problems posed by retroactive amendments to the guidelines. In addition, the facts in the Vallejo case are substantially different from those in the case before us and we do not believe the reasoning in that case is applicable here.

We are persuaded that the statutory language as applied to the present set of facts is clear, direct and requires no interpretation. Reliance on the plain wording does not bring about an absurd result and, therefore, we are bound by the terms of the statute. See United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992) (unless statutory language is ambiguous or would lead to "absurd results," we are bound by its plain meaning). We hold that the term of supervised release commenced in

8

this case when defendant was released from prison in 1991 and lapsed on October 17, 1994.

The challenged conduct occurred after the expiration date, October 17, 1994 and, therefore, was not a violation of supervised release. Consequently, neither 18 U.S.C. § 3583(e)(3), nor any other statutory provision empowered the district court to punish defendant for activity that occurred after the term of supervised release had expired. Whatever the defendant's culpability for that conduct in another context, it was not a violation of supervised release because the essential predicate of an active term of supervised release did not exist when the asserted violation occurred. See United States v. Levitt, 799 F.2d 505, 507 (9th Cir. 1986) (district court lacked jurisdiction when violation of probation occurred after probation terminated).[1]

The case will be remanded with instructions to vacate the Order of Court revoking the defendant's supervised release and dismiss the revocation petition with prejudice.

---

[1] At the hearing on January 12, 1996 in the district court, Reider admitted that his activity violated a condition of supervised release and expressly waived the argument that his supervised release had already expired in exchange for a sentence of time served. He nevertheless continued to assert that his supervised release had begun in 1991. On appeal, the government has not contended that these actions preclude defendant from challenging the district court's power to revoke his supervised release and impose a sentence. Accordingly, we do not consider the issue. See, e.g., United States v. Archambault, 62 F.3d 995, 998 (7th Cir. 1995) ("because the government does not argue that [defendant] waived this challenge, it has waived [defendant's] waiver."); United States v. Quiroz, 22 F.3d 489, 490-91 (2d Cir. 1994) (per curiam) (listing cases in which the government "waived waiver" by failing to raise waiver on appeal).