IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-10697
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

v.

TERRY LEE LYNCH,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 21, 1997

Before POLITZ, Chief Judge, and KING, Circuit Judge, and FOLSOM,[*]
District Judge.

KING, Circuit Judge:

     This case presents the issue of when the term of supervised

release begins for a defendant whose offense was committed

between October 27, 1986, the effective date of the Anti-Drug

Abuse Act of 1986, and November 1, 1987, the effective date of

the Sentencing Reform Act of 1984.  Terry Lee Lynch is such a

defendant, and the district court determined that he was still

within his term of supervised release when he engaged in conduct

that violated the conditions of his supervised release.  The

district court revoked Lynch's supervised release and sentenced

_____

     [*]  District Judge of the Eastern District of Texas, sitting
by designation.

him to nine months imprisonment.  Lynch appeals, arguing that the district court did not have jurisdiction to impose an additional sentence because, under the appropriate standard for calculating his supervised release term, his term had expired when he engaged in the relevant conduct.  We agree, and thus we reverse and remand with instructions to vacate the district court's order revoking Lynch's supervised release and to dismiss the revocation petition with prejudice.

## I.  BACKGROUND

The facts of this case are undisputed.  On or about May 21, 1987, Lynch committed the offense of knowingly distributing cocaine, in violation of 21 U.S.C. § 841(a)(1).  He was sentenced on November 6, 1987, to five years of imprisonment without eligibility for parole[1] and four years of supervised release.  At this time, 18 U.S.C. §§ 4161-4164 (repealed) applied, authorizing "good time" and providing for mandatory release upon the accrual of sufficient good time credit to discharge the sentence.  As a result of accrued good time, Lynch was released from the Volunteers of America halfway house on December 21, 1990, instead of April 2, 1992, the date on which he was originally scheduled to be released.

Between December 21, 1990, and April 2, 1992, Lynch was under the supervision of a probation officer on behalf of the

---

[1]  Lynch was sentenced without eligibility for parole because his case was governed by the Anti-Drug Abuse Act of 1986, which replaced most forms of parole with a system of supervised release.  *See Gozlon-Peretz v. United States*, 498 U.S. 395 (1991).

U.S. Parole Commission. The probation office calculated April 2, 1992, as the date Lynch's supervised release began. Thus, the probation office considered December 21, 1990, through April 2, 1992, as a period of mandatory release supervision or "regular" parole and April 2, 1992, through April 2, 1996, as the period of supervised release.

On March 7, 1996, Lynch's probation officer filed a petition to revoke his supervised release. The petition alleged that Lynch had violated the conditions of his release in January and February 1996 by testing positive for drugs, failing to submit urine samples, and leaving the residential treatment facility in which he was placed. Lynch pleaded not true to the allegations. Lynch also challenged the district court's jurisdiction to revoke his supervised release on the basis that his term of supervised release expired in 1994, four years after he was released from custody. The government responded that his term of supervised release did not end until April of 1996, four years after his originally scheduled release date. The district court agreed with the government, determined that the Lynch had violated the terms of the supervised release, and sentenced Lynch to nine months imprisonment. Lynch made a motion for new trial, reasserting the jurisdiction argument, and the district court denied the motion. Lynch has timely appealed.

## II. DISCUSSION

We review the issue of the district court's jurisdiction de novo. *In re United States Abatement Corp.*, 39 F.3d 563, 566 (5th Cir. 1994).

In 1984, in the Sentencing Reform Act ("SRA"), 18 U.S.C. §§ 3551 *et seq.*, Congress undertook a major reform of the federal sentencing scheme, one of the goals of which was to replace most forms of parole with a new system of supervised release. *Gozlon-Peretz v. United States*, 498 U.S. 395, 400 (1991). Congress delayed the effective date of these supervised release provisions until November 1, 1987, to ensure time for orderly implementation. *Id.* at 397. However, on October 27, 1986, Congress enacted the Anti-Drug Abuse Act ("ADAA"), which mandates terms of supervised release for certain drug offenses. 21 U.S.C. § 841(b)(1)(C).

Thus, the ADAA mandated certain terms of supervised release beginning on October 27, 1986, but the procedures for administering supervised release found in the SRA did not become effective until November 1, 1987. This one-year gap in the effective dates of these statutes created a conflict of interpretation among the courts of appeals as to whether the ADAA's supervised release provisions applied to offenses committed during this window period. *Gozlon-Peretz*, 498 U.S. at 397. The Supreme Court resolved this issue in *Gozlon-Peretz*, holding that "for offenses committed in the interim period between October 27, 1986, and November 1, 1987, supervised

4

release applies for all drug offenses in the categories specified by [the] ADAA." *Id.* at 409.

*Gozlon-Peretz* did not, however, resolve the question presented by the case at bar: does the time period for supervised release begin on the date the prisoner is released or on the date the prisoner would have been released if the time served had not been reduced? Lynch argues that according to the plain language of the applicable portion of the SRA, "[t]he term of supervised release commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). The government argues that during the time between Lynch's release (December 21, 1990) and the end of the actual five years to which he was sentenced (April 2, 1992), Lynch was on "regular" parole.[2] According to the law prior to the SRA, "special" parole did not begin until "regular" parole ended. The government contends that because supervised release is merely a substitute for "special" parole, supervised release does not begin until "regular" parole ends. Under this theory, Lynch's supervised release did not begin until April 2, 1992 (the date the actual five-year term expired), and ran for four years; therefore, when Lynch committed the acts the district court found violated the terms of his supervised release, Lynch was still in supervised release status.

---

[2] 18 U.S.C. § 4164 (repealed): "A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days."

5

While the Fifth Circuit has not addressed this precise issue, the Tenth Circuit recently did in *United States v. Reider*, 103 F.3d 99 (10th Cir. 1996). *Reider* involved a defendant whose offense occurred during the window period, and the court was faced with the exact issue we face in this case, "namely, the time when supervised release begins." *Id.* at 102. The government made the same argument in *Reider* as it does here -- that the term of supervised release did not begin until the actual time when the sentence was scheduled to expire, even though the defendant was released early. *Id.* The court rejected this argument: "The difficulty with the government's position is that it is inconsistent with the straightforward language of the statute that requires supervised release to begin when the 'person is released from imprisonment.'" *Id.* (quoting 18 U.S.C. § 3624(e)). The court noted that because application of the statutory language in this case "is clear, direct[,] requires no interpretation," and does not bring about an absurd result, "we are bound by the terms of the statute." *Id.* at 103. Thus, the defendant's term of supervised release began when he was released and expired before the relevant conduct occurred, meaning the district court had no jurisdiction to punish that conduct on the basis that it violated the terms of his supervised release. *Id.*

We agree with the Tenth Circuit that the plain language of the statute compels the result that the term of supervised release begins upon the defendant's release from imprisonment. We hold that for offenses committed during the window period

between October 27, 1986, and November 1, 1987, the term of supervised release begins on the date the defendant is released from imprisonment, not the date the sentence would have expired without early release.

Applying that holding to this case, Lynch's period of supervised release began on December 21, 1990, when he was released from Volunteers of America halfway house, and expired four years later in 1994. When the conduct alleged in the revocation petition occurred in 1996, Lynch was well past this expiration date and thus was not in violation of his supervised release. Therefore, the district court had no jurisdiction to punish Lynch for this conduct on the basis that it violated the terms of his supervised release.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE and REMAND WITH INSTRUCTIONS to VACATE the order revoking Lynch's supervised release and to DISMISS the revocation petition with prejudice.