Revised January 4, 2002

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No.  00-31462
00-31463
00-31464
01-30024

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus


SIMS BROTHERS CONSTRUCTION, INC., ROBERT
L. CASE, MARK E. JERKINS, AND AMTEK OF
LOUISIANA,INC.

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Middle District of Louisiana
_____

December 21, 2001

Before GARWOOD, WIENER, and CLEMENT[*], Circuit Judges.

CLEMENT, Circuit Judge:

Defendants-Appellants, Sims Brothers Construction, Inc.

(Sims), Robert Case (Case), Mark Jerkins (Jerkins), and Amtek of

---

[*] Judge Clement participated by designation in the oral
argument of this case as a United States District Judge for the
Eastern District of Louisiana. Since that time she has been
appointed as a Fifth Circuit Judge.

1

Louisiana, Inc. (Amtek) (collectively "Defendants"), challenge their convictions for illegal storage of hazardous waste in violation of the Resource Conservation and Recovery Act (RCRA), Title 42 U.S.C. §6928(d)(2)(A). We affirm the district court's conclusion that Title 42 U.S.C. §6928(d)(2)(a), as applied to this case, does not violate due process. We also affirm the district court's conclusion that the indictment charged the defendants with the essential elements of the crime and that the factual basis was sufficient to support the defendants' guilty pleas. Finally, we conclude that the district court did not lack jurisdiction.


## I.

### FACTS AND PROCEEDINGS

The facts were stipulated to by the parties. In January 1997, Albertson's Inc. ("Albertson's"), a corporation which owns and operates grocery stores throughout the nation, purchased property in Baton Rouge, Louisiana on which to build a supermarket. Subsequent to its purchase of the property, Albertson's contracted with Sims to be its general contractor. Sims subcontracted the demolition and site preparation work to Amtek.

On May 20, 1997, after commencing work, Amtek discovered two yellow canisters designed to hold gases under pressure. The canisters were located inside one of the buildings scheduled to be demolished. Both canisters had a label bearing a skull and

2

crossbones and the word "poison" written on it. The canisters additionally had "Property of Reddick Fumigants" stamped on them. It was subsequently discovered that the canisters contained liquified methyl bromide. Testing revealed that one or both of the canisters contained hazardous waste. The methyl bromide in both canisters weighed less than 100kg, and the total hazardous waste on the site was less than 1000kg in any one calendar month and less than an average of 100kg per calendar month for the calendar year.

An employee discovered the canisters in the building and immediately informed defendants Case, the president of Amtek, and Jerkins, the superintendent hired by Sims to oversee the project. Case and Jerkins, aided by others, removed the canisters from the building and set them in an open on-site area. Jerkins saw a poison label on one of the canisters, and Case saw the word "fumigant" on another. Case and Jerkins were not aware of the precise contents of the canisters until after they had been tested.

Jerkins and Case intended to have someone remove the canisters from the work site. They had discussions regarding proper removal of the canisters by an environmental company. However, no further effort to have the canisters removed from the site was made. Neither Jerkins nor Case or any representative of Sims or Amtek notified Albertson's, law enforcement, an environmental agency, or any commercial or industrial entity regarding the presence of the canisters. Both Jerkins and Case knew that Albertson's had

3

conducted an environmental site assessment on the property which did not indicate the presence of containers with hazardous waste.

The canisters remained at the site until approximately June 13, 1997 when an Amtek employee removed the canisters from the property without the defendants' knowledge. The employee gave the canisters to his cousin, Edith Rome. Ms. Rome had the canisters brought to her home and connected to her propane stove. The methyl bromide leaked from the canisters and made Ms. Rome and her son ill. Ms. Rome later died from methyl bromide poisoning.

Subsequent investigation revealed that the canisters were filled by Reddick Fumigants, Inc. and were bought by W.L. Albritton Farms in October, 1977. In 1977, the property was operated as a peach and vegetable farm. When it ceased being used as a farm, apartments were built on the property. Ms. Hallie Box managed the properties owned by ASA. She stated that the building in which the canisters were found was used for storage. Ms. Box was not aware of the canisters. ASA did not own the canisters. Ms. Box explained that, had she known of the canisters, she would have considered them trash and had them properly disposed of by an environmental company. Reddick Fumigants was still in existence in May and June of 1997 and would have accepted a return of the cylinders and their contents.

The defendants were indicted by a grand jury in the Middle District of Louisiana on February 9, 1999. They were charged with

4

illegal storage of hazardous waste in violation of RCRA, Title 42 U.S.C. §6928(d)(2)(A).  The defendants filed several motions to dismiss the indictment in the district court.  They alleged that they were denied due process either because the regulations at issue were unconstitutionally vague or because the government had not shown the minimum *mens rea* required for conviction.  They also asserted that the indictment was defective and that the district court lacked jurisdiction because the government was seeking to enforce state law.

The defendants maintained throughout the district court proceedings that they were "small quantity generators[1]" and were exempt from the permit requirements for the storage of hazardous waste.  The government asserted that the defendants were not "generators" and therefore could not be small quantity generators entitled to an exemption.  The district court held that the defendants were not generators because the canisters were already waste when Albertson's bought the property.  The canisters became waste, and therefore subject to regulation, when they were abandoned by W.L. Albritton.

---

[1] Under federal regulations, a small quantity generator of hazardous waste is a generator who produces less than an average of 1000kg of hazardous waste per month.  40 C.F.R. §260.10.  Such generators who produce no more than 100kg are "conditionally exempt small quantity generators" (CESQG's).  40 C.F.R. §261.5(a).  Entities that qualify for CESQG status are subject to less stringent permitting requirements than larger quantity generators.

The motions to dismiss the indictments were denied by the district court, and the defendants subsequently entered into a plea agreement with the government. The defendants pled guilty to the indictment but specifically reserved their right, on appeal, to review the denial of the motions to dismiss the indictment and to contest whether the stipulated facts supported the defendants' guilty pleas. At the hearing to accept the plea agreements, the defendants argued that the stipulated facts were insufficient to support a conviction under §6928(d)(2)(A). The district court concluded that the factual basis was sufficient and accepted the defendants' guilty pleas. The defendants were sentenced on December 1, 2000, and judgments were entered on December 7, 2000.[2] The defendants timely filed notices of appeal, and all four appeals were consolidated.

## II.

### ANALYSIS

#### 1. Due Process

Constitutional challenges are reviewed *de novo*.[3] The

---

[2] Sims was sentenced to five years probation, a fine of $100,000, and a special assessment of $400. Amtek was sentenced to five years probation and a special assessment of $400. Jerkins was sentenced to five years probation and a special assessment of $100. Case was sentenced to five years probation, restitution of $14,628, a fine of $10,000, and a special assessment of $100.

[3] *See* United States v. Lampton, 158 F.3d 251, 255 (5th Cir. 1998).

6

defendants contend that application of Title 42 U.S.C. §6928(d)(2)(A) to the instant facts violates the due process requirement that criminal statutes give fair warning and notice of proscribed conduct. The defendants raise four due process issues on appeal. First, the defendants had no notice or fair warning that they would not be considered "generators" and thus not exempt from permit requirements for on-site storage of hazardous waste. Second, they had no knowledge of the facts supporting the denial of the on-site storage permit exception which rendered their conduct criminal. Third, the defendants maintain that they did not have notice that Chapter 21 of Louisiana's Hazardous Waste Regulations would apply to them since it was repealed as state law by the Louisiana legislature. Fourth, they argue that the definition of "storage" is unconstitutionally vague because the definition of "storage" as applied to compressed gas in a cylinder includes containing gas in a cylinder with no further action on the part of the defendants.

### a. Whether the defendants were generators

A "generator" is defined by the Louisiana Department of Environmental Quality ("DEQ") and the EPA as "any person, by site, whose act or process produces hazardous waste identified or listed, or whose act first causes hazardous waste to become subject to regulation."[4] While storing hazardous waste without a permit is

---

[4]L.A.C. 33:V.109 (1997); 40 C.F.R. §260.10 (1997).

usually prohibited, there are exceptions to the permit requirement for generators who meet certain conditions. "Small quantity generators" ("SQGs"), those who "generate less than 1000kg of hazardous waste in a calendar month," have more lenient standards by which to abide.[5] Federal regulations permit SQGs to store hazardous waste on-site without a permit for 180 days as long as they comply with safe storage conditions.[6] SQGs who generate 100kg or less of hazardous waste in a calendar month are "conditionally exempt" SQGs ("CESQGs").[7] Waste generated by CESQGs is not subject to regulation and may be stored without a permit provided certain conditions are met.

The defendants submit that demolition contractors who remove hazardous substances from buildings that are scheduled to be demolished are "generators." Recalling that a generator is one who "produces" or "whose act first causes hazardous waste to become subject to regulation," it is clear that neither Albertson's nor the defendants qualify as generators. The facts clearly show that the canisters of methyl bromide were "waste" when Albertson's bought the property, so neither Albertson's nor the defendants could be considered generators because they did not produce or first cause the hazardous waste to become subject to regulation.

---

[5] 40 C.F.R. §260.10 (1997).

[6] 40 C.F.R. §262.34(d) (1997).

[7] 40 C.F.R. §261.5 (1997).

8

Even if the defendants were considered to be generators, to be exempt from having a permit as an SQG, certain conditions must be met under both state and federal regulations. The facts to which the defendants stipulated clearly show that they did not meet these conditions and could not qualify for unpermitted storage of hazardous waste. While the defendants argue that the state regulations do not apply, the regulations under Chapter 21 are less stringent than the federal regulations. The defendants failed to meet the more strict federal regulations for CESQGs and are not entitled to the exemption under state or federal law. As a result, even if the defendants were considered generators, they could not qualify for the permit exemption. Accordingly, there was no due process violation.

### b. Knowledge

The defendants maintain that their due process rights were denied because they lacked knowledge of facts that would have rendered their otherwise lawful conduct criminal. They submit that they had no knowledge that they would not be considered generators who were exempt from the permit requirements. The parties stipulated that they lacked knowledge of the history of the canisters. The defendants argued that, as far as they knew, either they or Albertson's were the first to decide whether to dispose of the canisters and thus fall within the definition of "generator." This argument fails because even if the defendants were

9

"generators," their convictions are valid because they violated the federal regulations for unpermitted storage of hazardous waste as we explain below.

### c.     Vagueness

Under RCRA, for waste to be hazardous it must be "solid waste."[8]   For gaseous material to be "solid waste" it must be "contained."[9] "Storage" is defined as "the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste."[10] The defendants argue that the statute's vagueness in defining how one stores contained gaseous material, which is contained from inception, unconstitutionally violates due process.

This Court is concerned with the fact that the statute fails to specify a time frame within which, after hazardous waste is discovered in one's possession, that person becomes criminally liable for storing it without a permit.  However, under the facts of this case, the statute is not unconstitutionally vague. The defendants were indicted for illegal storage of hazardous waste. What made their conduct criminal was the knowing storage of hazardous waste without a permit.  The defendants argue that the definition of storing gaseous material gave them no fair warning

---

[8] 42 U.S.C.§6903(5).

[9] 42 U.S.C. §6903(27).

[10] 42 U.S.C. §6903(33).

10

that "merely finding the cylinders on a jobsite or placing them on the ground without further containment constitute[d] a felony." The defendants moved the canisters from the building knowing, at a minimum, that they were potentially hazardous because they had "poison" and "fumigant" stamped on them, yet the defendants allowed the canisters to remain in an open area for three weeks without reporting their existence.

Vagueness challenges outside the First Amendment context must be considered in light of the particular facts of the case.[11] We are not persuaded by the defendants' argument that they could not reasonably understand that they were storing hazardous waste without putting the canisters inside an additional container as opposed to putting them out in the open. The question that must be resolved is at what point were the defendants intentionally storing the methyl bromide? This is a question of fact. The defendants should have notified the appropriate agencies that they found potentially hazardous material on their property much sooner than they did. Allowing the canisters to remain in an open area on the property for three weeks, while doing nothing to facilitate their removal or disposal, is "storage" in violation of §6928(d)(2)(A). While we are concerned with the potential danger of prosecutorial discretion under this statute, as applied to the instant facts, we hold that

---

[11] Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 496, 102 S.Ct. 1186, 1192 & n.7, 71 L.Ed.2d 362 (1982).

11

the defendants were storing hazardous waste in violation of Title 42 U.S.C. §6928(d)(2)(A).

## 2. Deficiency of the Indictment

"An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of future prosecutions for the same offense."[12]  The defendants were charged under Title 42 U.S.C. §6928(d)(2)(A) with storing hazardous waste without a permit. Defendants' position that the indictment was deficient results from their incorrect assumption that exemptions to the permit requirement are elements of the offense.  The defendants cannot assert that the government need prove that the defendants were not entitled to the permit exemptions provided by statute.  It is an affirmative defense, not an element of the crime, that the defendants were entitled to allow the waste to remain on the site as a CESQG.[13]  We

---

[12]  United States v. Cavalier, 17 F.3d 90, 92 (5th Cir. 1994).

[13]   The defendants rely on United States v. Baytank, 934 F.2d 599 (5th Cir. 1991), to assert that it was the government's burden to prove that the defendants "stored hazardous waste without a permit and...violated the limited conditions under which [they] could store those wastes without a permit." However, the sufficiency of the indictment was not at issue in Baytank.  The Court made it clear that such unpermitted storage was permissible for the ninety day period "only if it complie[d] with certain safe storage conditions."  The Baytank Court's holding does not necessitate a finding that the government must charge and negate exceptions to a permit requirement in an indictment.  See United States v. Outler, 659 F.2d 1306, 1310 n.3 (5th Cir. Unit B 1981)(generally, the burden of proving compliance with a statutory exception is on the defendant).

hold that the district court was correct in finding that the indictment was not deficient for failing to allege an element of the crime charged.

### 3. Jurisdiction of the District Court

Challenges to the jurisdiction of the district court are reviewed *de novo*.[14] The defendants submit that the district court lacked jurisdiction over this case because the government was attempting to enforce state regulations. The state regulations that the defendants claim were enforced against them only applied to SQGs. Because we hold that the defendants were not generators of methyl bromide, the argument that the district court lacked jurisdiction to enforce Louisiana regulations applicable to SQGs is without merit.

### 4. Sufficiency of the Factual Basis

A district court's acceptance of a guilty plea is a factual finding which we review under the clearly erroneous standard.[15] The district court's conclusion that the factual basis was sufficient to support a violation of Title 42 U.S.C. §6928(d)(2)(A) was not clearly erroneous. RCRA defines "solid waste" as including any "discarded material...resulting from industrial, commercial, mining,

---

[14] <u>United States v. Lynch</u>, 114 F.3d 61, 63 (5th Cir. 1997).

[15] *See* <u>United States v. Adams</u>, 961 F.2d 505, 509 (5th Cir.1992).

13

and agricultural operations...."[16]  Methyl bromide is a hazardous waste once it is discarded or intended to be discarded.[17]  Materials that are "abandoned by being...disposed of" or "accumulated, stored, or treated (but not recycled) before or in lieu of being abandoned by being disposed of" are considered "discarded" and therefore solid waste under RCRA.[18]

The defendants contend that the methyl bromide was not "waste" because the government failed to show that the canisters were intentionally abandoned or discarded.  The canisters were clearly discarded or abandoned.  Whether it was done intentionally is of no moment.  Arguments that the contents of the canisters could have been used as a fumigant or returned to Reddick are not supported by the evidence and therefore without merit.  The canisters' contents were never intended to be used as a fumigant by the apartment complex according to the testimony of Ms. Box, and there is there no indication that Albertson's or its agents intended to use the canisters' contents for any purpose.  In hindsight, Reddick's possible willingness to take the canisters back does not necessitate a conclusion that the defendants actually intended to return the canisters to Reddick.  The canisters sat in an open area for three weeks until they were stolen.  There is no possible conclusion but

---

[16] 42 U.S.C. §6903(27).

[17] L.A.C. 33:V. 4901.D.

[18] L.A.C. 33:V.109.

14

that the canisters were abandoned or discarded.

The defendants additionally contend that, even if the canisters were waste, they had no such knowledge, negating an essential element of the offense charged. The factual basis is clearly sufficient with respect to whether the defendants knew that the canisters were waste. The defendants stipulated that the canisters contained hazardous material as evident from the labels on the canisters and their corroded appearance. Case and Jerkins also stipulated that they discussed what to do with the canisters, including hiring an environmental company to remove and dispose of them. These facts cannot support the defendants' contentions that it was reasonable to assume that the fumigant was usable or that the defendants would have contacted Reddick to reclaim the canisters.

## III.

## CONCLUSION

We affirm the district court's determination that Title 42 U.S.C. §6928(d)(2)(A), as applied to the facts of this case, did not violate due process. We affirm the conclusion that the indictment alleged the essential elements of the crime charged. We also affirm the acceptance of the guilty pleas, as the factual basis was sufficient to support the crime charged. Finally, we conclude that the district court did not lack jurisdiction over this case. AFFIRMED.