# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 10, 2025

Lyle W. Cayce
Clerk

No. 24-10005

Karen Ashley,

*Plaintiff—Appellee*,

*versus*

Clay County,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:23-CV-13

Before Smith, Stewart, and Duncan, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

This case concerns a jurisdictional tension between the Federal Arbitration Act (the "FAA") and the collateral order doctrine premised on governmental immunity. Clay County (the "County") appeals the district court's order requiring arbitration of the employment and First Amendment claims brought by Karen Ashley, the former Chief Nursing Officer of Clay County Memorial Hospital. The County denies any employment relationship with Ashley, asserts its immunity as a governmental entity, and disputes any obligation to arbitrate under her employment agreement. The district court declined to address the County's arguments regarding

No. 24-10005

governmental immunity and issued an order compelling arbitration, thereafter denying its motion to dismiss as moot.

For the reasons that follow, we REVERSE the district court's order compelling arbitration insofar as it declined to address the County's motion to dismiss on the basis of governmental immunity under Texas law. We REMAND with instructions for the district court to resolve the issue of governmental immunity as it pertains to the County's motion to dismiss.

I.

Clay County Memorial Hospital ("CCMH") is among Texas's last county-owned hospitals. It operates under the oversight of the Clay County Commissioners' Court, which appoints a Board of Managers to govern the hospital's operations pursuant to Chapter 263 of the Texas Health & Safety Code. To support CCMH financially and ensure healthcare continuity for County residents, the County also established the Clay County Memorial Hospital Foundation, a nonprofit 501(c)(3) corporation, in 1992.

In October 2021, CCMH hired Ashley as its Chief Nursing Officer ("CNO"). During her tenure, Ashley allegedly raised concerns about patient safety issues, including missing fentanyl and procedural errors in blood transfusions. She allegedly reported these issues internally to CCMH personnel and its Board of Managers. On September 21, 2022, purportedly, she publicly addressed these concerns at a CCMH Board meeting.

Ashley also internally advocated for CCMH to terminate its contract with Concord Medical Group PLLC ("Concord") and partner instead with ACPHealth. Ashley collaborated with CCMH's CEO, Lisa Swenson, and other staff to pursue this change. Following this advocacy, Ashley alleges that the County, CCMH, and the Foundation retaliated against her by

2

No. 24-10005

terminating her employment, violating her First Amendment rights to free speech and association.[1]

On January 17, 2023, Ashley filed suit against the County and Concord Medical Group, alleging retaliation under the Texas Occupations Code § 301.413 and 42 U.S.C. § 1983. The County moved to dismiss, asserting that it was not Ashley's employer and had taken no adverse actions against her. In response, Ashley amended her complaint to add CCMH as a defendant, narrowing her claims against the County to First Amendment retaliation and conspiracy under § 1983. She later filed another amended complaint, reasserting her Texas Occupations Code claims against both CCMH and, alternatively, the County, citing the ongoing uncertainty surrounding CCMH's legal status. The County maintained it was not Ashley's employer and moved to dismiss on governmental immunity grounds.

Meanwhile, CCMH invoked an arbitration clause in Ashley's employment agreement and moved to compel arbitration under its Alternative Dispute Resolution Agreement ("Agreement"). The County, a purported nonsignatory to the Agreement, neither moved to compel arbitration nor sought to participate in it. Nevertheless, the district court *sua sponte* compelled the County to arbitration alongside CCMH, denying the County's motion to dismiss as moot.

The County, asserting its governmental immunity and lack of employer status, moved for reconsideration. The district court denied that

---

[1] The County and CCMH have offered inconsistent characterizations of CCMH's legal status and its relationship to the County. CCMH argued in the district court that it is merely a "division of Clay County." Conversely, the County initially described CCMH as an independent entity. This ambiguity led Ashley to file claims against both CCMH and the Foundation. When Ashley's counsel sought clarification, the County stated that its "current position" classified CCMH as a separate entity, prompting her to maintain claims against both.

No. 24-10005

motion, deferring the adjudication of the County's employer status to the arbitrator. The County timely appealed.

## II.

The County complains that: (1) the district court violated its due process rights by compelling it to arbitrate, even though the Hospital moved to compel only Ashley to arbitrate;[2] (2) the district court lacked jurisdiction to compel the County to arbitrate due to the County's assertion of governmental immunity; (3) the district court improperly compelled it to arbitrate under the FAA;[3] and (4) the district court erred when it refused to dismiss for failure to state a claim and for lack of standing. We address each argument in turn.

_____

[2] The County fails to cite sufficient authority—aside from a cursory reference to Article III—to explain how the district court violated its due process rights by compelling arbitration. Such a deficiency constitutes waiver. *See Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) ("[A] litigant can waive an argument if he fails to cite authority to support his position."). Accordingly, we hold that the County has waived its due process argument.

[3] We lack appellate jurisdiction to review whether the district court improperly compelled the County to arbitration under the FAA. 9 U.S.C. § 16(b)(2) provides that "an appeal may not be taken from an interlocutory order . . . directing arbitration to proceed under section 4" of the same title, except as otherwise provided in 28 U.S.C. § 1292(b). The County bases its appeal on the collateral order doctrine, which, by its nature, pertains to an interlocutory order. Furthermore, the district court's order was presumptively issued under § 4, as it is the only section conferring authority to compel arbitration in these circumstances. We therefore, under § 16(b)(2), lack appellate review of this collateral order. *See Doe v. Tonti Mgmt. Co.*, 24 F.4th 1005, 1009–10 (5th Cir. 2022).

No. 24-10005

## A. The District Court's Jurisdiction to Compel Arbitration

We begin by addressing the threshold question of whether the district court lacked jurisdiction to compel the County to arbitrate in light of its assertion of governmental immunity. Resolving this issue requires us to determine, first, whether we have appellate jurisdiction to review the matter and, second, whether the district court erred by failing to address the immunity defense as a threshold issue.

### 1. Appellate Jurisdiction

We must "examine the basis of [our] jurisdiction, on [our] own motion if necessary." *Green Tree Servicing, L.L.C. v. Charles*, 872 F.3d 637, 639 (5th Cir. 2017). Presumptively, causes of action fall outside the limited jurisdiction of federal courts; the burden lies on the parties to establish jurisdiction's existence. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). Without it, therefore, this "court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Both the County and Ashley assert that we have appellate jurisdiction under the collateral order doctrine, though they part ways on its proper scope. The County contends that our jurisdiction extends to all claims implicated in the motions to compel arbitration and dismiss, including Ashley's § 1983 claims. Ashley, by contrast, asserts that we have jurisdiction over the arbitration order and her state-law claims but denies that it reaches the § 1983 claims, asserting that municipalities lack immunity under well-established § 1983 jurisprudence.

What neither party grapples with, however, is the underlying jurisdictional tension: can the collateral order doctrine, invoked to assert

5

immunity, override the statutory bar on interlocutory appeals in 9 U.S.C. § 16(b)(2)?

We begin with the parties' asserted basis for our appellate jurisdiction: the collateral order doctrine. As a rule, federal courts generally extend their jurisdiction only to "final decisions of the district courts." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985). The collateral order doctrine, however, represents a "practical construction" of the final judgment rule of 28 U.S.C. § 1291. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 41–42 (1995). This narrow doctrine allows federal appellate jurisdiction over cases, that while not ending the litigation, effectively function as final decisions. *See id.*

To fall within this exception, an order must "(1) conclusively determine the disputed question; (2) resolve an issue that is completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment." *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 345 (5th Cir. 2016) (quoting *Walker v. U.S. Dep't of Hous. & Urban Dev.* 99 F.3d 761, 766 (5th Cir. 1996)). Orders denying governmental immunity typically satisfy these criteria. *See, e.g.*, *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013). In this case, the County explicitly premises its collateral order on the district court's refusal to consider its immunity defense.

In *Doe v. Tonti Mgmt. Co.*, this court declined to apply the collateral order doctrine to interlocutory orders granting a motion to compel arbitration. *See* 24 F.4th 1005, 1009–10 (5th Cir. 2022) (declining to "use[] the collateral order doctrine to exercise jurisdiction over an interlocutory

order compelling arbitration" (citation omitted)).[4]  In *Doe*, however, no governmental entity asserted immunity, a fact distinguishing that case from the instant one. Even so, our precedent in *Doe* establishes a rule that we cannot set aside here.

The Supreme Court has held that "immunity is a threshold question, to be resolved as early in the proceedings as possible." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231–33 (1991)). This circuit has faithfully followed that directive, resolving immunity issues before addressing others. *See, e.g.*, *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 & n.4 (5th Cir. 2022) (pretermitting issues such as standing and preclusion once the court determined immunity applied); *Backe v. LeBlanc*, 691 F.3d 645, 648–49 (5th Cir. 2012) (holding that a district court erred in withholding its ruling on a qualified immunity defense pending general discovery); *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) ("The question of qualified immunity must be addressed as a threshold issue because this issue determines a defendant's immunity from suit.").

On the other hand, 9 U.S.C. § 16(b)(2), as stated above, bars interlocutory appeals of orders issued under § 4. While this prohibition reflects Congress's strong preference for arbitration, it stands in tension with the general principle of immunity. This jurisdictional tension arises when the district court grants a motion to compel arbitration without first addressing the issue of immunity.

Our precedent in *Helton v. Clement*, provides a framework for resolving this jurisdictional impasse. *See* 787 F.2d 1016, 1017 (5th Cir. 1986).

---

[4] *But see Hardie v. United States*, 367 F.3d 1288, 1291 (Fed. Cir. 2004) (noting the federal government's position that collateral-order doctrine confers jurisdiction to hear whether the government "has preserved its immunity from binding arbitration," but rejecting that position because one of the three elements were not satisfied).

In *Helton*, the appellant brought suit under 42 U.S.C. § 1983, alleging constitutional violations by a state official. *Id.* at 1016. The state official asserted defenses of absolute and qualified immunity. *Id.* at 1017. Rather than adjudicating those defenses, the district court notified the parties that "any further motions in [that] case [would] not be ruled upon by the court prior to trial but will be carried along with the trial of the case on the merits." *Id.* That ruling applied broadly to all pending motions, leaving the immunity defense to languish. *Id.* On appeal, this court held that "an order which declines or refuses to rule on [a] motion to dismiss on the basis of a claim of immunity" constitutes a final decision under 28 U.S.C. § 1291. *Id.* We, however, stopped short of deciding the immunity claim itself, remanding the matter for the district court's consideration. *Id.* *Helton* therefore holds that this court has appellate jurisdiction when a district court "declines or refuses" to address a motion to dismiss involving an immunity defense. *Id.*

In applying *Helton*, we resolve the jurisdictional tension between the FAA and the collateral order doctrine as it pertains to immunity. Our focus here is not on the merits of the arbitration order itself but on whether the district court properly addressed its own jurisdiction to compel arbitration. The question therefore before us is whether the district court reached the issue in accordance with established principles of jurisdictional authority.

Here, as in *Helton*, the district court bypassed its obligation to decide the threshold immunity question. It refused to adjudicate the County's motion to dismiss, denied that motion as moot, deferred the issue to arbitration, and stayed the proceedings. This refusal to engage with the immunity question—leaving it unanswered—constituted a final decision under 28 U.S.C. § 1291. *See Helton*, 787 F.2d at 1017. For these reasons, we hold that the district court's order denying the County's motion to dismiss as moot is appealable. We do not, however, reach the question of whether the

County "is entitled to the immunity it claims." *Id.* That is a matter for the district court to decide in the first instance.

## *2. Decisional Sequencing*

Having confirmed our appellate jurisdiction, we now turn to the district court's jurisdiction. This inquiry requires us to assess the nature of the County's immunity defense and whether the district court was obligated to address that issue before ruling on the motion to compel arbitration. Governmental immunity from suit, after all, is no ordinary defense; it operates as a jurisdictional bar, depriving a trial court of authority to proceed. For this reason, "we review the jurisdiction of the district court *de novo.*" *See Briseno v. Ashcroft*, 291 F.3d 377, 379 (5th Cir. 2002) (citing *United States v. Sims Bros. Constr.*, 277 F.3d 734, 741 (5th Cir. 2001)).

"Motions to compel arbitration are not one of the limited instances in which district courts have leeway to pretermit the resolution of jurisdictional challenges." *Hines v. Stamos*, 111 F.4th 551, 566 (5th Cir. 2023). This rule rests on an axiom: "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)).

This requirement is central to the County's governmental immunity defense under Texas law. Texas distinguishes between sovereign immunity, which shields the State and its agencies from suit absent legislative consent, and governmental immunity, which extends similar protections to political subdivisions such as "counties, cities, and school districts." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). Sovereign immunity bars both

liability and suit unless expressly waived by the state legislature with "clear and unambiguous language." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) (citing Tex. Gov't Code § 311.034; *Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994)); *see In re City of Galveston*, 622 S.W.3d 851, 856 (Tex. 2021). Similarly, governmental immunity applies unless abrogated by statute. *See St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 763 (5th Cir. 2023).

The jurisdictional nature of governmental immunity under Texas law is well settled. It serves not only as a shield against liability but also as a bar to judicial authority over the suit itself. *See Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002) ("Sovereign immunity is jurisdictional."); *St. Maron Props.*, 78 F.4th at 762. To be sure, when a defendant is entitled to governmental immunity, the court is deprived of subject matter jurisdiction over the dispute. *See Morgan*, 724 F.3d at 582.

In this case, the County's governmental immunity defense raises a jurisdictional inquiry because it potentially shields the County from suit altogether. *See Cozzo*, 279 F.3d at 280; *St. Maron Props.*, 78 F.4th at 762. As a jurisdictional bar, the County's immunity defense would, if successful, strip the district court of subject matter jurisdiction. *See Morgan*, 724 F.3d at 582. The district court nonetheless compelled arbitration without first addressing the County's immunity defense. By bypassing this threshold jurisdictional issue, the district court's arbitration order failed to adhere to our precedent. *See Hines*, 111 F.4th at 566. Accordingly, we hold that the district court erred "by not resolving challenges to its jurisdiction before deciding arbitrability." *Id.* at 556.

The question of the district court's jurisdiction ultimately hinges on whether governmental immunity applies in this case. As discussed, *supra*

No. 24-10005

II.A.1, we have refrained from addressing that issue, as it is one that the district court must resolve in the first instance.[5]

### III.

For the reasons stated herein, we REVERSE the district court's order compelling arbitration insofar as it declined to address the County's motion to dismiss on the basis of governmental immunity under Texas law. We REMAND with instructions for the district court to resolve the issue of governmental immunity as it pertains to the County's motion to dismiss before it rules on the motion to compel arbitration.

―――――――――――――――――――

[5] As for the other issues, at this juncture, we decline to decide whether the district court erred in refusing to dismiss for failure to state a claim or lack of standing. The district court did not reach the merits of these issues, electing instead to defer them to arbitration. As such, it is not our role to address a question that the district court left unresolved. Ours is a "court[] of review, not of first view," and we adhere to that principle as both a matter of judicial restraint and sound policy. *See Utah v. Su*, 109 F.4th 313, 320 (5th Cir. 2024) (internal quotation marks and citation omitted).